In re H. L. (Hershel) HILL, Debtor.

H. L. (Hershel) HILL, Plaintiff,

v.

FARMERS HOME ADMINISTRATION, Defendant.

Bankruptcy No. 581-00025.
Adv. No. 582-0004.

United States Bankruptcy Court,
N. D. Texas,
Lubbock Division.

April 9, 1982.

James A. Walters, Lubbock, Tex., for debtor.

Paulina M. Jacobo, Asst. U. S. Atty., Lubbock, Tex., for Farmers Home Administration.

BILL H. BRISTER, Bankruptcy Judge.

### MEMORANDUM AND ORDER

H. L. (Hershel) Hill ("Hill"), debtor, filed complaint to declare one of his creditors, Farmers Home Administration, an agency of the United States Department of Agriculture, ("FmHA"), in contempt. The thrust of the complaint is that after the Chapter 11 petition had been filed, FmHA, with full knowledge of the pending bankruptcy, attempted to setoff post-petition monies which might be payable to the debtor through another agency of the United States Department of Agriculture, the Agricultural Stabilization and Conservation Service ("ASCS"). The debtor, by trial amendment, additionally contends that the Court should enter declaratory judgment that FmHA is not entitled to setoff against its debt any post-petition monies due to the debtor from ASCS. FmHA defends on a number of bases and seeks attorney's fees against the debtor for allegedly acting in bad faith in filing the contempt complaint. Nonjury trial was conducted on February 3, 1982. The following summary constitutes the findings of fact required by Rule 752.

Hill is a farmer who is indebted to FmHA on at least four notes in the original cumulative total of $1,231,220.00. Those notes are secured by liens against several tracts of real estate and liens against per-

sonal property. Hill filed petition for order for relief under Chapter 11 of Title 11, United States Code, on February 24, 1981. On that date Hill's debt to FmHA, with interest, totalled $530,924.00. FmHA was listed as one of the debtor's principal creditors in the bankruptcy schedules and FmHA has actively participated in all hearings and meetings of creditors in the case. On all relevant occasions since February 24, 1981, the responsible officials of FmHA had actual knowledge, as well as constructive knowledge, of the pending bankruptcy proceedings filed by Hill.

The Feed Grain, Upland Cotton and Wheat Programs for crop years 1978–1981, defined in 7 C.F.R. § 713, et seq., are programs supervised by ASCS. Under those programs producers of feed grains, cotton and wheat who meet the eligibility requirements may qualify for payments authorized under the programs. For the purposes of this memorandum there are two types of payments payable to eligible farmers for the 1981 crop year—disaster payments resulting from prevented planting or low yield and payments representing difference between target price and the actual market price of the crop. Hill participated in the Feed Grain, Upland Cotton and Wheat Program for the 1981 crop year. For that crop year the total payments (excluding disaster payments) which a participating eligible producer may be entitled to receive under the programs shall not exceed $50,000.00. 7 C.F.R. § 713.1(b).

Whether any monies will be due to farmers under the program cannot be determined until late in each crop year. In late November or early December, 1981, notice [1] was circulated by ASCS concerning the prospects for funding of deficiency payments to the eligible producers under the program, based on the difference between the actual market value of the cotton which each farmer had produced and the target price. That announcement set in motion the chain of events which resulted in the challenge by Hill in this adversary proceeding.

The Secretary of Agriculture had promulgated regulations which permit agencies of the Department of Agriculture, among others, to make demand upon ASCS for setoffs to recover indebtednesses owed to those agencies. 7 C.F.R. § 13.1, et seq. Those regulations detail the procedures which the cognizant officials of agencies of the Department of Agriculture shall follow in giving notice of and making claim to those setoffs. 7 C.F.R. § 13.6. On December 3, 1981, (more than nine months after the bankruptcy petition was filed) John O. Barnes, the Acting State Director of FmHA, following those promulgated procedures, sent a "Request for Setoff" to the State Executive Director of ASCS at College Station, Texas. By that action FmHA requested an involuntary setoff of any ASCS monies to which Hill might be entitled to apply against Hill's debt to FmHA. The testimony of cognizant ASCS county officials at the trial reflected that the request for setoff from FmHA would be followed by ASCS, and no monies would be paid to Hill, without order of the Court. It is that action [2] by FmHA in demanding the involuntary setoff which the debtor challenges in this proceeding and for which he seeks to have the cognizant officials of FmHA, as well as the agency itself, held in contempt.

1. The actual announcement, verifying funding, was made on January 29, 1982. Until that announcement was made there was no "debt" to setoff, because the formula for calculation of payments and the funding of the program for 1981 had not been made.

2. The evidence adduced at the hearing reflected also that on June 4, 1981, less than three months after the petition for order for relief under Chapter 11 had been filed, FmHA had made written demand upon Plains Cotton Growers Association, a private organization, that all crops off Hill's farms must be accounted for through the Gaines County Offices of FmHA and that crop income checks from the sale of cotton, or any other commodity, must be made jointly to the farmer and FmHA if the farmer borrows living and crop production funds through FmHA. That action by FmHA had not been included in the original complaint for contempt and is not a basis for the order entered herein.

The signing and mailing by the Acting State Director of FmHA of the request for involuntary setoff was not one merely where Barnes routinely signed a larger number of letters, oblivious of their content. There is no evidence that Barnes had actual knowledge that he was signing and mailing a letter to ASCS which concerned a debtor under Chapter 11. However, it is uncontroverted that officials under Barnes at the state office did have actual knowledge of the pending Chapter 11 case by Hill and that they caused the letter to be prepared and mailed in conscious disregard of that fact. The agency employee who caused the request for setoff to be prepared specifically knew that Hill was a Chapter 11 debtor and was concerned enough about the effect of the bankruptcy on the right of FmHA to setoff its debt, if any it had, to make specific inquiry of counsel for FmHA as to whether the letter should be sent. According to the testimony at the contempt trial the counsel for FmHA advised the agency employee that the internal regulations of FmHA required that the demand be sent. Therefore, the demand letter was prepared, presented to Barnes for signature, and mailed.

FmHA advances several bases for its contention that it has not violated the automatic stay by making the demand for setoff. It argues that at the time the letter was written there were no monies owed by ASCS to Hill and that since there was no harm, there is no foul. It argues that it was making demand for setoff against Hill individually and not against property belonging to the estate, because the "estate" of the debtor is not listed on the ASCS rolls. It continues to urge that it was required to comply with its internal standardized procedures and regulations in making the setoff demand.

None of those arguments are persuasive. The officials of ASCS testified that they would not pay the money over to Hill, or to anyone other than FmHA, as a result of the letter from Hill. Those officials indicate that they will require an order from this court to do other than comply with the setoff demand. Notwithstanding the fact that no monies were on that date due to Hill the sending of the letter effectively interfered with normal payment procedures and, even on the date of trial, ASCS was honoring the setoff demand.

FmHA attempts to distinguish between "property of the estate" and "property of the debtor," by its contention that any money owed by ASCS is "property of the debtor" and not "property of the estate." The instant case is one in Chapter 11 with the debtor, Hill, in possession. It is true that the prepetition debtor and the debtor-in-possession are separate and distinct "entities." However, for the purposes of any money owed by the Department of Agriculture on account of farming operations the concept of separate "property of the debtor" has merged into "property of the estate." This claimed defense by FmHA is without merit.

The argument advanced that the internal regulations of FmHA (which mandates that the setoff demand be made) must be followed shall be given somewhat greater treatment. In this area where agriculture is a significant part of the economy and an increasing number of farm and farm related bankruptcies are being filed I perceive the issue as being one which could arise frequently. Therefore, my conclusions on the issue should be brought home to all parties in order that they can better formulate future procedures.

I recognize that in the State of Texas FmHA has outstanding loans to a large number of farmers and ranchers. Fair and efficient handling of those loans requires that the cognizant officials and employees of FmHA substantially comply with promulgated regulations and guidelines in administration of those loans. The public is quick to criticize a bureaucracy, and its employees, for the seemingly rigid observance by those officials and employees of promulgated guidelines and regulations. In the vast majority of cases, however, that criticism is unfounded. When unbounded discretion is given to those who administer complex federal programs, and standard-

ized procedures are not employed, anarchy and chaos result.

There are times, however, when strict observance of standardized procedures and regulations must bend to other considerations. The instant circumstances present one of those occasions.

The enactment of Chapter 11 to Title 11, United States Code, emphasizes as its most important aspect the fact that worthy debtors should be rehabilitated. The Bankruptcy Court provides a centralized forum where material issues which develop in the case, and in the proceedings in, under, and related to the case, may be resolved in a systematic, orderly, and economical fashion. Congress, by its enactment of the Code, provides for an automatic stay which prohibits creditors from taking any action against a debtor which is reasonably calculated to further disorganize the debtor's efforts and requires the debtor to divert attention from his case and to deplete his resources in defending such actions.

There is no evidence that Congress intended to exempt governmental departments and agencies from the mandatory provisions of § 362, which treats the subject of the automatic stay. Congress has provided a procedure for seeking relief from that stay which is not onerous and is both speedy and effective. I conclude, therefore, that the Congressional mandate which provides an automatic stay against a creditor proceeding against a debtor is superior to, and takes precedence over, the internal standardized regulations and procedures promulgated by a governmental department or agency. I further conclude that FmHA, by its intentional disregard of the automatic stay, is in contempt.

Civil contempt remedies fall into two broad categories. It is remedial in that its purpose is to make a recalcitrant party comply with an order of the court. It is compensatory in that its purpose is to reimburse an injured party for losses and expenses incurred, because of the adversary's noncompliance. The Court has discretion to order payment by FmHA of the reasonably necessary out-of-pocket expenses of the debtor, including reasonable attorney's fees, occasioned by the failure of FmHA to observe the automatic stay.

In that regard the attorney for the debtor has filed an itemized statement of the time which he spent in investigating, developing, and prosecuting this case. FmHA contends that no attorney's fees should be ordered paid to debtor's attorney and that, in fact, FmHA should recover attorney's fees against the debtor, because it was not necessary that the debtor take the action which he did. FmHA insists that a simple conference with counsel for FmHA would have completely solved the issues and the notice to ASCS would have been withdrawn.

Settlement of controversies by discussion and compromise is a method of resolution of disputes which is far superior to contested litigation. However, there is nothing in the adversary system which *requires* the parties to negotiate. Counsel for a party can shun contact with adverse counsel to the fullest extent if he so desires, and the refusal of debtor's counsel in that regard is not evidence of bad faith and does not entitle FmHA to an award of attorney's fees. However, his failure to mitigate damages can often be traced to that failure to negotiate or to attempt to resolve the issues short of litigation.

The itemized and chronological statement of the attorney for Hill reflects that the thrust of his services was directed at the avoidance of the claim of entitlement to setoff advanced by FmHA. The debtor desperately needs the money represented by the ASCS payments, if any is to be made to him or on his account. The contempt action filed by him is not solely in vindication of § 362 and is merely incidental to that predominate purpose of avoiding the setoff claim. I have considered all of those factors in rejecting the request by the debtor for compensatory award of attorney's fees.

I find that in this case FmHA consciously and intentionally disregarded the automatic stay provisions of § 362 in making the setoff demand. I further find that

Hill suffered no actual damages as a result of that intentional action on the part of FmHA. I conclude that FmHA and its cognizant officials are in contempt by virtue of that conscious and intentional action in making setoff demand against ASCS monies.

As mentioned above, the contempt remedies are either remedial, compensatory, or both. Since Hill suffered no actual damages (excepting only some incurred attorney's fees) no sanctions are made which requires payment of damages to Hill. In the belief that in the future—in this case and in any other bankruptcy case, now pending or hereinafter filed—FmHA and its cognizant officials will change their operating procedures and will desist from taking any action in violation of the automatic stay provisions of § 362 to collect its indebtednesses, no remedial sanctions are presently imposed and the assessment thereof is held in abeyance.

█ The final issues raised by the pleadings, and by trial amendment, are concerned with the application of the concept of setoff of post-petition monies against pre-petition debts. The first issue is whether, in fact, the subject monies, if any, due to Hill from ASCS are post-petition monies or whether they can be considered pre-petition monies. It is true that preparations for farming for the 1981 crop year were commenced prior to the date the petition in bankruptcy was filed on February 24, 1981. Therefore, it can reasonably be argued that the 1981 crop year commenced prior to the filing of the bankruptcy petition. The debtor participated in the ASCS program during the 1981 crop year and it is not unreasonable to argue that the entitlement to monies dates to the commencement of the crop year. In that event, the monies received could be pre-petition monies. However, the prerequisites for determination of entitlement to money occurs at or near harvest time. It is only after the market price of the crop is determined that one can conclude that a deficiency between that price and the target price occurs. Also, it is late in the season before a conclu-

sion can be reached as to whether there is a "disaster" which provides for disaster payments by ASCS. Therefore, I conclude that those monies, if any, to be paid by ASCS to, or for the benefit, of Hill are post-petition monies.

█ I conclude, further, that post-petition monies may not be setoff against a pre-petition indebtedness. The right of offset is provided by § 553(a) which states:

"Except as otherwise provided in this section and in §§ 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case . . . ."

The debt and claim is not required to be of the same character before the principle of setoff may be applied. They may arise from different transactions as long as there is a mutuality of obligations. It is elementary that pre-petition obligations may be setoff, one against the other. Also, there is authority for the concept of setoff to apply to mutual post-petition obligations. *In Re Alfar Dairy, Inc.*, 5th Cir. 1972, 458 F.2d 1258, cert. den. 409 U.S. 1048, 93 S.Ct. 517, 34 L.Ed.2d 501 (1972). However, the pre-petition debtor and the debtor-in-possession are separate and distinct entities. A post-petition obligation may not be setoff against a pre-petition obligation of the debtor, because there is no mutuality of obligation. *Standard Oil Company of New Jersey v. Elliott*, 4th Cir. 1935, 80 F.2d 158. *See In Re Shoppers Paradise, Inc.*, 8 B.R. 271, 277–78 (Bkrtcy.S.D.N.Y., 1980); *Framingham Winery, Inc. v. J. A. G. Inc.*, 7 B.R. 624, 626–27 (Bkrtcy.D.Mass., 1980); *Nelson v. First National Bank and Trust Company of El Dorado*, 6 B.R. 248, 249–50 (Bkrtcy.D. Kan., 1980); *Big Bear Supermarket No. 3 v. Princess Baking Corporation*, 5 B.R. 587, 590–91 (Bkrtcy.S.D.Cal., 1980); *In Re Howell*, 4 B.R. 102, 108 (Bkrtcy.M.D.Tenn., 1980).

I conclude, therefore, that Farmers Home Administration may not setoff against the indebtedness owed it by Hill those monies which otherwise are payable by ASCS to, or for the benefit of, Hill.

LET JUDGMENT BE ENTERED AC-
CORDINGLY.