**In the Matter of Dickie Dale HAFFNER and Jacqueline Sue Haffner, Debtors.**

**Bankruptcy No. 82–10367.**

United States Bankruptcy Court, N.D. Indiana, Fort Wayne Division.

Dec. 16, 1982.

David Peebles, Fort Wayne, Ind., for petitioner.

Christina McKee, Asst. U.S. Atty., Fort Wayne, Ind., for respondent Commodity Credit Corp., U.S.D.A.

Howard B. Sandler, Fort Wayne, Ind., for Eastern Indiana Production Credit Corp.

## ORDER

ROBERT K. RODIBAUGH, Bankruptcy Judge.

This matter is before the Court on the debtors' motion for a contempt citation against the United States Department of Agriculture et al., and on the debtors' application for an emergency order of enforcement of the Court's prior order of November 2, 1982.*  Hearings having been held and memoranda submitted, the matter was taken under advisement.

---

* At the hearing the debtors stated that Eastern Indiana Production Credit Association (PCA) had abandoned its claim to a lien on debtors' 1982 crop and thus those parts of the application referring to PCA were withdrawn.

## Findings of Fact

Having heard the arguments of counsel and having reviewed the entire record in this matter, the Court finds the following to be fact in this proceeding.

The debtors herein are engaged in the business of farming and are operating as debtors-in-possession pursuant to Chapter 11 of the Bankruptcy Code.[1] The debtors filed their petition in bankruptcy on April 20, 1982. In the fall of 1982 the debtors approached the local office of the Commodity Credit Corporation, a governmental corporation under the direction and control of the United States Department of Agriculture, regarding a common transaction in the farming business wherein the farmer stores grain through the Commodity Credit Corporation (CCC hereafter). In return CCC advances cash to the farmer in what is technically a loan. In actuality the transaction is a sale with the option to repurchase the grain and sell it on the open market if and when prices increase over the subsidized level assured by CCC. The debtors had entered into such transactions with this same office in years prior to the fall of 1982.

In late October of 1982, CCC informed the debtors that their application to participate in the program regarding their 1982 crops would have to be processed through a special series of review and decision-making, since they were in a Chapter 11 proceeding. This special procedure was required solely because the debtors were involved in a bankruptcy proceeding.

Upon receipt of the above notification regarding special procedures, the debtors filed the motion for contempt that is at issue herein. Thereafter on November 2, 1982, the debtors filed an application for a necessary order requesting, among other things, that the Court direct CCC to pay over the money to which the debtors would be entitled by their participation in the crop storage program regarding the debtors' 1982 crop. On November 2, 1982, this Court issued an Order that reads as follows:

IT IS THEREFORE CONSIDERED, ORDERED, ADJUDGED AND DECREED that the said Commodity Credit Corporation be, and it hereby is, ordered forthwith, upon compliance by said Debtors with all other requirements imposed generally upon farmers dealing with said Corporation who are not Debtors under the Bankruptcy Code, to pay to the Debtors herein all sums to which they are entitled but for their being Debtors under such Code.

IT IS FURTHER ORDERED that the said Commodity Credit Corporation not impose any further or other requirements upon the Debtors herein by reason of their being such Debtors, other than those normally imposed in the ordinary course of business of said Corporation upon farmers generally, whether or not such farmers are Debtors under the Bankruptcy Code.

CCC has not contested this order. After this Order was issued, it was forwarded to the regional office of the General Counsel for the Department of Agriculture in Chicago. Due to a communications failure, the Chicago office did not act on this order, nor did it forward it with directions to CCC's local representative until the first part of December, 1982.

In late November, the debtors sought to complete the transaction with CCC and receive funds. They were told that the transaction could be made only if CCC retained or setoff from the amount that otherwise would be paid to the debtors amounts that either are due or are allegedly due from a prepetition transaction of a similar nature. CCC indicated that federal regulations require that any past due amount be setoff in the manner that CCC was going to do regarding the debtor's application. The amount which CCC has determined to be withheld is significant in relation to the total amount the debtors would otherwise receive. As a result of the position taken by CCC, the debtors filed an application for an emergency order to enforce the Court's order of November 2, 1982.

1. 11 U.S.C.A. § 1101 et seq. (West 1979).

At the hearing in this matter, CCC stated that it was ready to comply with this Court's Order of November 2, 1982. It interprets this Order to allow for the setoff it is requiring, since the Order says that the debtors must comply with all other requirements imposed generally upon farmers dealing with CCC who are not debtors under the Bankruptcy Code, and since the Order states that CCC is not to impose any further or other requirements upon the debtors herein by reason of their being debtors, other than those normally imposed in the ordinary course of business of CCC upon farmers generally, whether or not such farmers are debtors under the Bankruptcy Code. The regulations requiring the setoff apply to any farmer whether or not he or she is involved in a bankruptcy.

The amount the government intends to setoff from the monies otherwise payable to the debtors is based upon CCC's claim that the debtors owe various amounts to CCC on previous transactions that arose prior to debtors' petition in bankruptcy. At the hearing debtors admitted that they had sold $4,000 worth of 1981 crop without the required approval of CCC and without turnover of the proceeds to CCC. Further, the evidence established that the debtors owed $4,800 in bin payments. Further, the evidence established that one of the debtors signed a document in a transaction with CCC regarding 1981 crops that indicated that there were no liens on those crops. In fact, there was a lien. That lienholder is asserting its interest in the proceeds of the 1981 crops.

The evidence established that the debtors have complied with all other requirements of CCC regarding the transaction for the 1982 crop. Further, there are no liens on the 1982 crop.

At the hearing the parties initially agreed that CCC would complete the transaction but escrow $25,000 until the rights of the various parties were settled by further proceedings in the bankruptcy case. Later CCC indicated it could not do so because of the claim of the lienholder.

**2.** 11 U.S.C.A. § 525 (West 1979).

## Conclusions of Law

### The Motion for Contempt

The debtors argue that CCC should be found to be in contempt of Court due to violation of Bankruptcy Code Section 525 [2], which prohibits discrimination against a debtor by a governmental unit, and because CCC has failed to comply with this Court's Order of November 2, 1982.

Having reviewed the evidence, the Court is concerned about the treatment accorded to these debtors and about the failure of the government to act forthwith as required by its Order of November 2, 1982; nevertheless, the Court continues the motion for contempt and sets that matter for a status report hearing on January 20, 1983, at 1:00 p.m., in the Federal Building, 1300 S. Harrison Street, Fort Wayne, Indiana.

### Application for Emergency Order of Enforcement

In their application, the debtors argue that the government has failed to comply with the Order in that it has not acted forthwith but rather has delayed in an unreasonable fashion. Further, the debtors contend that the government is not entitled to any setoff of prepetition debts by the provisions of Bankruptcy Code Section 362(a)(7) [3], which prohibits postpetition setoffs without first obtaining relief from the automatic stay.

CCC argues that it is ready to complete the transaction and only has not done so because the debtors refuse to accept the terms of the setoff. Further, CCC contends that federal regulations require that it setoff the amount it intends to do so. Those regulations apply to all farmers whether they are involved in bankruptcy or not. Furthermore, since the Order of November 2, 1982, required the debtors to be in compliance with all requirements asked of nonbankruptcy debtors, CCC has not failed to comply with the Order.

**3.** 11 U.S.C.A. § 362(a)(7) (West 1979).

In addition, CCC contends that setoff, as the term is used in federal regulations applicable to this transaction, is different from the use of that term in the Bankruptcy Code and thus Section 362(a)(7) does not apply.

■ The Court does agree with CCC that Bankruptcy Code Section 362(a)(7) does not apply in this case. The "setoff" that CCC is attempting in this matter is not a "setoff" as the term is used in the Bankruptcy Code. First of all, Section 362(a)(7) prohibits the setoff of any *debt owing to the debtor* that arose before the commencement of the case under Title 11 against any claim against the debtor. CCC does not owe any debt to the debtor. There is nothing to setoff in the sense that the Code uses the term. Mutuality of obligation is a necessary prerequisite for the right of setoff to accrue. *In re J.A.G. Inc.,* 7 B.R. 624, 626 (Bkrtcy.D.Mass. 1980).

Setoff as it is defined in the federal regulations that govern CCC is "the application of a specified amount from amounts payable to a debtor as liquidation, in whole or in part, of an amount owed by the debtor." 7 C.F.R. § 13.2(f). What this means in fact is that CCC retains an amount from the current transaction to pay any past due debt. The regulations requiring the retention of funds from a current transaction to recover past due payments constitutes a method for collecting past due debts. For example, in this case, the debtors can participate in the price support program only if CCC can collect past due debts.

While the above set of circumstances do not violate Bankruptcy Code Section 362(a)(7), the Court finds that the enforcement of the regulations, to the extent that they require the retention of money to recover prepetition debts in a postpetition transaction involving debtors who are persons proceeding as petitioners in a bankruptcy case at the time of the retention, constitutes a violation of Bankruptcy Code Section 362(a)(6)[4]. This section provides that:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title operates as a stay, applicable to all entities, of—

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title.

Clearly the enforcement of the "setoff" requirement is an attempt to collect a prepetition debt. The government admitted that the debtors meet the requirements necessary to participate in the price support program for the 1982 crops, except for the debtors' refusal to pay the past due, prepetition debt. The government, in effect, uses the regulation as leverage in forcing a debtor in bankruptcy to reaffirm a prepetition debt. It makes no difference that CCC would apply the same requirement to a farmer who is not involved in a bankruptcy proceeding, since it is the Bankruptcy Code which provides a debtor special protections from creditors not available to those who are not proceeding under a bankruptcy petition.

The automatic stay set out in Bankruptcy Code Section 362 is very broad in scope. The language of the statute and the legislative history make Congress' intent clear. "The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops *all collection efforts* (emphasis added), all harassment and all foreclosure actions." H.R.Rep. No. 595, 95 Cong. 1st Sess. 340 (1977) U.S.Code Cong. & Admin.News 1978, pp. 5787, 6296. "Paragraph (6) prevents creditors from attempting in *any way* (emphasis added) to collect a pre-petition debt." Id. at 342, U.S.Code Cong. & Admin.News 1978, p. 6298.

In analogous cases courts have found that government regulations that condition receipt by a debtor in bankruptcy of a service upon payment of a prepetition debt violate Section 362(a)(6). For example, the Court in *In re Heath,* 3 B.R. 351 (Bkrtcy.N.D.Ill.

---

4. 11 U.S.C.A. § 362(a)(6) (West 1979).

1980) held that a state university's conduct in refusing to provide a Chapter 13 debtor with a transcript until prepetition debts were paid violated Section 362(a)(6). *See also, In re Howren,* 10 B.R. 303 (Bkrtcy.D. Kan.1980); *In re Lanford,* 10 B.R. 132 (Bkrtcy.D.Minn.1981).

▇ Furthermore, refusal to enter into the transaction except for payment of prepetition debts is itself a type of action taken against the debtor.

More directly on point are the holding and reasoning of the Bankruptcy Court in *In re Hill,* 19 B.R. 375 (Bkrtcy.N.D.Tex. 1982). That Court held that a request by the Farmers Home Administration, an agency of the United States Department of Agriculture, for an involuntary setoff of any monies due from the Agriculture Stabilization and Conservation Service to a farmer as a result of his participation in a type of price support program (similar to the one involved herein) violated the automatic stay provision of Section 362. Furthermore, the Court held that such a setoff was not allowed under Bankruptcy Code Section 553(a)[5]. *Hill* involved precisely the same regulations as the CCC relies upon in the case at bar. The Court in *Hill* was not persuaded by the government's arguments that it is required to comply with its internal standardized procedure and regulations. CCC has made the same argument in this case. This Court, likewise, finds the contention unpersuasive.

▇ The automatic stay of Section 362 is a statutory expression of Congress' intention to prohibit creditors from taking any action against a debtor which is reasonably calculated to further disorganize the debtor's efforts to deal with his financial problems and to interfere with a debtor's attempt to rehabilitate. Further, it is settled that Section 362 includes governmental units within its scope. *In re Adana Mortg. Bankers, Inc.* 12 B.R. 989, 997 (Bkrtcy.N.D. Ga.1980); 11 U.S.C.A. § 101(14) (West,

1979). Also, it is clear that specific statutory language prevails over the regulations of an agency when the two are in conflict. *Continental Oil Co. v. Jones,* 80 F.Supp. 340 (W.D.Okla.1948), *affirmed* 176 F.2d 519 (10th Cir.1949); *Mobil Oil Corp. v. F.T.C.,* 406 F.Supp. 305 (S.D.N.Y.1976), *supplemented* 430 F.Supp. 849 (S.D.N.Y.1977).

Other provisions of the Bankruptcy Code, read together with Section 362, support the result the Court reaches herein. For example, Bankruptcy Code Section 525[6] prohibits discrimination by a governmental unit against a debtor under Title 11. Case law has interpreted this section to prohibit a governmental agency from considering past due, prepetition debts in determining whether to extend postpetition credit. *Hennen v. Dayton Power & Light Co.,* 17 B.R. 720 (Bkrtcy.S.D.Ohio 1982). Further, while Section 525 would permit a governmental unit to consider future financial responsibility or ability of a borrower, the government may not base its determination of further dealings with a bankruptcy debtor solely upon prepetition obligations of the debtor. In the case herein the government has admitted that the debtors otherwise qualify for participation in the price support program except for their unwillingness to allow the government to collect prepetition debts. Further, the government has stated it is ready to complete the transaction as soon as the debtors agree to the collection. Clearly the government is basing its determination of continued dealings with these debtors upon prepetition obligations. The Bankruptcy Court should not tolerate such conduct. *See e.g. In re Richardson,* 15 B.R. 925 (Bkrtcy.E.D.Pa.1981); *In re Gibbs,* 9 B.R. 758 (Bkrtcy.D.Conn. 1981); *In re Coleman A M. Moving Services, Inc.,* 8 B.R. 379 (Bkrtcy.D.Kan.1980). The Court in *Gibbs,* citing legislative history, points out that collection efforts by a governmental unit would give it preferential treatment to the detriment of all other creditors of a debtor.[7] This would clearly

---

5. 11 U.S.C.A. § 553(a) (West 1979).

6. 11 U.S.C.A. § 525 (West, 1979).

7. *In re Gibbs,* 9 B.R. 758, 763 (Bkrtcy.D.Conn. 1981).

be the circumstance in this case. CCC is an unsecured creditor as to the prepetition debts it is attempting to recover. Like other creditors, it is to look to the bankruptcy estate for satisfaction of prepetition debt.

Furthermore, if CCC believes that the debtors have violated federal laws regarding the creation of the prepetition debt, the Bankruptcy Code provides procedures and remedies by which the government can assert its rights within the bankruptcy law. For example, CCC asserts that one of the debtors signed a document for the price support program regarding 1981 crops indicating that there were no liens on the crop when, in fact, there was. If the government believes this set of circumstances gives it any special rights to recover the resulting debt, it can bring an action for the determination of the dischargeability of a debt.

■ In addition to the above discussed sections of the Bankruptcy Code, Section 553 [8] represents the Code's provisions regarding setoffs. Under this Section, the "setoff" the government is attempting would be in violation of the Bankruptcy Code. First, this "setoff" is not that which is permitted under Section 553. A postpetition obligation may not be setoff against a prepetition obligation of the debtor, because there is no mutuality of obligation. *In re Hill*, 19 B.R. 375, 380 (Bkrtcy.N.D.Tex.1982). Secondly, even if the retention of funds were to be considered a setoff as the term is used in bankruptcy, it would not be permitted under Bankruptcy Code Sections 553 and 362(a)(7).

Finally, the Court notes that based on the federal regulations put into evidence in this matter, it appears that the regulations themselves would prohibit CCC from pursuing the setoff in this case. For example, 7 C.F.R. Section 13.5,[9] which is entitled "Conditions under which setoff or withholding shall not be made" states in subpart (c):

Setoff shall not be made:

(c) Where collection of a debt has been barred by a discharge in bankruptcy and the debtor has not expressed a desire to make payment.

Admittedly, the discharge has not been entered in this case yet. However, the proceeding is currently pending, and the debts involved have not been determined to be non-dischargeable. Further 7 C.F.R. section 1408.4(b)(3) [10] regarding setoffs states:

... debts due CCC shall be set off, ..., where the following conditions apply:

(3) There is no legal bar to enforcement of the debt.

Since this Court holds that the automatic stay bars the enforcement of collection efforts in this case, the regulations require CCC to refrain from setoff.

By this decision CCC only loses its leverage to force the collection of a prepetition debt from a person who is proceeding under Title 11. The current crops which are involved in the transaction are unencumbered. If the government had not entered into this transaction, it would still have to look to the bankruptcy proceeding to assert any rights it may have regarding prepetition debts.

■ However, the Court is aware that the debtors admitted to the unapproved sale of some of the 1981 crop. Further, there are other problems that are likely to be litigated regarding other debts to CCC. The debtors indicated at the hearing that they could still go about their efforts at rehabilitation even if $25,000.00 was held in escrow from the funds payable to them as a result of the transaction regarding the 1982 crops. The Court is required to balance the harm when enforcing stay and injunctive provisions of the Bankruptcy Code. In the exercise of this equitable duty and discretion, the Court concludes that $25,000.00 should be set aside in an escrow account pending the outcome of disputes regarding debts owed to CCC by the debtors.

**8.** 11 U.S.C.A. § 553 (West 1979).

**9.** 7 C.F.R. § 13.5 (1982).

**10.** 7 C.F.R. § 1408.4(b)(3) (1982).

Accordingly, the Court grants the debtors' application for a special order in the following manner:

1. The Department of Agriculture, through its Commodity Credit Corporation, is directed to enter into the transaction involved herein without delay.

2. The department, through its Commodity Credit Corporation, is to pay over to the debtors-in-possession the usual amount that would result from this transaction, without any setoff, except that the Court directs the Department to set aside the amount of $25,000.00 in an escrow account from the fund to be paid to the debtors pending outcome of further proceedings regarding the government's rights as to certain debts owed it by these debtors.

SO ORDERED.