**In re SPORTFAME OF OHIO, INC., Debtor.**

**SPORTFAME OF OHIO, INC., Plaintiff,**

v.

**WILSON SPORTING GOODS CO., Defendant.**

**Bankruptcy No. 83–00266.
Adv. No. 83–0471.**

United States Bankruptcy Court, N.D. Ohio, W.D.

April 25, 1984.

H. Buswell Roberts, Jr., Toledo, Ohio, for plaintiff.

Stewart H. Aron, Toledo, Ohio, for defendant.

## OPINION AND ORDER

WALTER J. KRASNIEWSKI, Bankruptcy Judge.

This matter came on for trial on November 17, 1983 upon plaintiff's complaint for an injunction to require defendant to sell inventory to it on a cash basis, for attorney's fees and costs for an alleged violation of the automatic stay of 11 U.S.C. § 362(a), and to set aside an alleged preferential transfer under 11 U.S.C. § 547(b). While finding a violation of stay and granting injunctive relief, the Court declines to award attorney's fees. The transfers in question should be avoided as preferential.

## INJUNCTION AND AUTOMATIC STAY

Plaintiff, Sportfame of Ohio, Inc. (Sportfame), runs four retail sporting goods stores in Ohio, three of which are located in Toledo, one in Findlay. Plaintiff carries a wide variety of goods and, in addition to supplying customers at its stores, employs salespeople to call on schools and institutions with sports programs directly.

Defendant, Wilson Sporting Goods Company (Wilson), has sold its line of sporting goods to plaintiff at wholesale for almost 10 years until recently when it refused to ship any further goods to plaintiff. Defendant had supplied plaintiff with a wide variety of its name brand products which are widely advertised and promoted.

On February 14, 1983 plaintiff filed a voluntary petition under Chapter 11 of the Bankruptcy Code. In the twelve month period prior to the filing of the petition, plaintiff had purchased some $45,000 worth of goods from defendant at wholesale and sold them at retail to its customers for approximately $70,000. Sometime prior to the filing of the petition, plaintiff became in arrears with defendant for shipments of goods in the amount of approximately $18,-000. Due to the arrearage, defendant

ceased shipping goods to plaintiff prior to the filing of the petition.

In March and April of 1983 Sam R. Shible, president of Sportfame, contacted defendant's credit manager by telephone in an attempt to have shipments of inventory resumed. On these occasions, Mr. Shible attempted to buy goods from defendant for cash. Defendant, while aware of the Chapter 11 proceeding, refused to resume shipments of goods unless plaintiff brought its account current or made arrangements to pay 100% of the arrearage.

As a result of defendant's refusal to fill plaintiff's orders, plaintiff can no longer supply its customers with the Wilson line of sporting goods. According to the evidence adduced at trial, many of plaintiff's individual and institutional customers have asked for certain Wilson goods by name. These same customers many times either refuse or are reluctant to accept as replacements other lines of goods carried by plaintiff. Plaintiff's president testified that its inability to fill orders for Wilson goods will result in customer dissatisfaction and loss of profits.

Plaintiff asserts that defendant's refusal to resume shipments of goods absent full payment of its debt contravenes 11 U.S.C. § 362(a)(6) which stays "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case ...." Plaintiff seeks an injunction that would require defendant to resume supplying it with inventory on a cash basis and attorney's fees and costs for the present action. Defendant asserts that the complaint fails to state a claim upon which relief can be granted and, in addition, challenges the Court's jurisdiction over its person.

■ First, the Court rejects defendant's defense of lack of jurisdiction over its person. Indeed, while it is questionable whether the minimum contacts test is even applicable in bankruptcy proceedings, see *Coby Glass Products Co. v. Torigian Laboratories, Inc. (In re Coby Glass Products Co.)*, 22 B.R. 961, 9 BCD 756 (Bkrtcy.D.R.I. 1982); *Nixon Machinery Co. v. Roy Energy, Inc. (In re Nixon Machinery Co.)*, 15 B.R. 131, 8 BCD 373 (Bkrtcy.E.D.Tenn. 1981), the evidence adduced at trial that defendant's salespeople called on plaintiff repeatedly at its place of business within this district for the past ten years overwhelmingly establishes minimum contacts in this case.

Plaintiff first contends that defendant's refusal to ship goods to it is in violation of § 362(a)(6) of the Code which provides that a petition in bankruptcy operates as a stay of "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title ...." Defendant denies this contention, instead asserting that it cut off shipment of goods prior to the filing of the petition in this case and that, instead of asking for repayment of its debt, it only sought to encourage debtor to submit a plan calling for 100% repayment of its debts. Upon the evidence adduced at trial in this case, the Court concludes that defendant's actions contravene § 362 of the Code.

The only witness produced at trial to testify as to defendant's reasons for refusal to ship goods to the debtor was Sam R. Shible, president of debtor. Mr. Shible contacted defendant Wilson's credit manager by telephone on three separate occasions shortly after the filing of the petition in this case. On each occasion Mr. Shible, as debtor's representative, offered to pay cash on delivery or cash in advance to Wilson in exchange for their resumption of supply of the Wilson line of sporting goods. On the first two of these occasions, near the first of March and first of April of 1983 respectively, Wilson's representative refused to ship goods to debtor absent payment or arrangements to pay the full amount of the prepetition debt owed to them. On the last of these contacts, prompted in part by an attempt to fill an order for a golf club ordered for one of plaintiff's customers, Wilson also suggested that it might consider filling orders if and when debtor submitted a plan calling for repayment of 100% payment to debtor's creditors. In

addition, Wilson's representative suggested that debtor advise its customer to obtain his order from another retailer.

■ On the basis of this testimony the Court finds that defendant's sole animus in refusing to ship goods to debtor for cash was its desire to coerce debtor's repayment of its prepetition indebtedness and that this act, albeit a passive one, was an "act to collect, assess, or recover a claim against the debtor" in contravention of 11 U.S.C. § 362(a)(6).

As one commentator has remarked, "[t]he stay of section 362 is extremely broad in scope and ... should apply to almost any type of formal or informal action against the debtor or property of the estate." 2 *Collier on Bankruptcy*, ¶ 362.-04 at 362–27 (15th ed. 1979). Section 362(a)(6), in particular, was intended to prevent *any kind* of attempt to collect prepetition debts:

> Paragraph (6) prevents creditors from attempting in any way to collect a prepetition debt. Creditors in consumer cases occasionally telephone debtors to encourage repayment in spite of bankruptcy. Inexperienced, frightened, or ill-counseled debtors may succumb to suggestions to repay notwithstanding their bankruptcy. This provision prevents evasion of the purpose of the bankruptcy laws by sophisticated creditors.

House Report No. 95–595, 95th Cong., 1st Sess. 342 (1977); Senate Report No. 95–989, 95th Cong., 2d Sess. 50–51 (1978), U.S. Code Cong. & Admin.News 1978, pp. 5787, 5836–5837, 6298. In the present case, although it was the debtor and not the creditor who initiated the contact and despite the fact that this is not a consumer bankruptcy, under the circumstances of this case, Wilson's act was inherently coercive and against the spirit of the bankruptcy laws.

Debtor's sole business is the sale of sporting goods to its consumer and institutional customers. The evidence was uncontradicted that the Wilson line of goods, due to advertising and name brand identification, were both in demand and often irreplaceable in the minds of debtor's customers. In addition, debtor sold nearly $70,000 worth of Wilson goods at retail in the year prior to the filing of the petition.

In early 1983 when debtor was suffering from cash flow problems and being subjected to legal action by certain of its creditors, it filed a petition for reorganization under Chapter 11 of the Bankruptcy Code in an effort to reorganize itself. At this time, while struggling to maintain its competitive status in the sporting goods market and keep its business alive, it contacted Wilson, a major supplier with whom debtor had transacted business for nearly 10 years. In an effort to fill both existing and projected future orders of Wilson goods, debtor offered to pay cash to Wilson for any shipments of postpetition goods. Despite Wilson's awareness of debtor's financial difficulties and in apparent indifference to the opportunity presented for itself to make a profit, in "carrot on a stick" fashion, Wilson refused to supply goods to debtor unless it made payment or arrangements to pay all existing indebtedness to it.

While perhaps unremarkable otherwise, Wilson's actions take on an added significance upon the filing of a petition in bankruptcy. Wilson could have simply refused, for any reason, to sell goods to debtor or offered no explanation for its refusal to do business. Instead, its sole reason for refusing to sell goods to debtor was its desire to collect its prepetition debt. The act in this context had the effect of interfering with the reorganization effort, a result at odds with the purpose of the bankruptcy laws.

As plaintiff points out, an analogy can be drawn from those cases that have found that a state university's refusal to issue a transcript to a debtor absent payment of prepetition debt, in addition to constituting a type of discriminatory treatment by a governmental unit proscribed by 11 U.S.C. § 525, when motivated by the sole purpose of attempting to collect a prepetition debt, violated § 362(a)(6). *Board of Trustees v. Howren (In re Howren)*, 10 B.R. 303, 7 BCD 43 (Bkrtcy.D.Kan.1980); *In re Heath*,

3 B.R. 351, 6 BCD 169 (Bkrtcy.N.D.Ill. 1981). *See also, In re Ware*, 9 B.R. 24, 7 BCD 373 (Bkrtcy.W.D.Mo.1981) (action of private institution). In a similar case, a private college's refusal to permit a Chapter 13 debtor, who filed a 100% Chapter 13 plan and made substantial payments toward current tuition, to attend classes absent payment of arrearages scheduled in Chapter 13 plan and schedules was held to be an action to collect a prepetition debt with the purview of § 362(a)(6). *In re Parkman*, 27 B.R. 460 (Bkrtcy.N.D.Ill. 1983). In addition, the Court in *Parkman* enjoined the university from barring the debtor from classes during the pendency of the Chapter 13 proceeding. 27 B.R. at 426.

More directly on point is *In re Haffner*, 25 B.R. 882, 9 BCD 1293 (Bkrtcy.N.D.Ind. 1982). In *Haffner* the debtors were farmers operating as debtor-in-possession under Chapter 11 of the Bankruptcy Code. Debtors sought to store grain with the Commodity Credit Corporation (CCC) and receive cash advances in a transaction which, while technically a loan, in actuality is a sale with the option to repurchase and sell on the open market if and when prices increase over the subsidized level assured by CCC. When debtor sought to complete such a transaction they were told the transaction could be made only if CCC retained, or setoff from the amount that otherwise would be paid to the debtors, amounts which were due or allegedly due from a prepetition transaction of a similar nature in accordance with federal regulations. The Court found that the regulations, to the extent that they require the retention of money to recover prepetition debts in a postpetition transaction, violated the automatic stay of § 362(a)(6). 25 B.R. at 886, 9 BCD at 1295. The court further remarked:

> The automatic stay set out in Bankruptcy Code Section 362 is very broad in scope. The language of the statute and the legislative history make Congress' intent clear. 'The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops *all collection ef-*

*forts* (emphasis added), all harassment and all foreclosure actions.' H.R.Rep. No. 595, 95 Cong. 1st Sess. 340 (1977) U.S.Code Cong. & Admin.News 1978, pp. 5787, 6296. 'Paragraph (6) prevents creditors from attempting in *any way* (emphasis added) to collect a pre-petition debt.' Id. at 342, U.S.Code Cong. & Admin.News 1978, p. 6298.

. . . .

> Furthermore, refusal to enter into the transaction except for payment of prepetition debts is itself a type of action taken against the debtor.

25 B.R. at 886–887, 9 BCD at 1295. The court went on in *Haffner* to order the CCC to enter into the transaction with debtor and to pay over the usual amount to debtor without any setoff.

It seems clear from the foregoing discussion that ample authority exists for the finding that Wilson violated the automatic stay by refusing to enter into cash transactions with debtor absent payment of its prepetition debt where its sole motivation was to collect its prepetition debt. While clear, in retrospect, that the stay was violated, due to the relatively obscure nature of the violation in this case, the Court is inclined to deny debtor's prayer for costs and attorney's fees in this case. Debtor's prayer for an injunction requiring Wilson to fill postpetition orders for goods, however, should be granted.

The courts in *In re Parkman, supra,* 27 B.R. at 460 and *In re Haffner, supra,* 25 B.R. at 882, 9 BCD at 1293, were apparently compelled to remedy the violation of stay found in those cases by ordering the creditor to permit the debtor to attend classes, in the former case, and to transact business with the debtor without exercising a right to setoff, in the latter. Due to the extraordinary nature of the injunctive remedy, however, the Court is disinclined to grant debtor's application for a permanent injunction enjoining Wilson to supply it with inventory absent a more thorough analysis under traditional standards for the grant of injunctive relief.

Debtor finds support for its claim to injunctive relief in those cases under the Bankruptcy Code and Bankruptcy Act that have recognized the inherent equitable power of a bankruptcy court, in proper circumstances, to restrain cancellation of a contract in order to preserve the continuation of the debtor's business. *Holland Am. Ins. Co. v. Sportservice, Inc. (In re Cahokia Downs, Inc.)*, 5 B.R. 529, 6 BCD 925 (Bkrtcy.S.D.Ill.1980); *In re Queens Boulevard Wine & Liquor Corp.*, 503 F.2d 202 (2d Cir.1974); *In re Traders Compress Co.*, 381 F.Supp. 789 (W.D.Okl.1973); *In re Merritt Lumber Co., Inc.*, 336 F.Supp. 325 (E.D.Pa.1971), *See also, In re Amber Lingerie, Inc.*, 30 B.R. 736, 10 BCD 850 (Bkrtcy.S.D.N.Y.1983) (enjoining termination of existing insurance policies); *Varisco v. Oroweat Food Co. (In re Varisco)*, 16 B.R. 634, 8 BCD 772 (Bkrtcy.M.D.Fla.1981) (enjoining termination of franchise agreement). *Cf. Trigg v. United States (In re Trigg)*, 630 F.2d 1370 (10th Cir.1980) and *Shell Oil Co. v. Anne Cara Oil Co., Inc. (In re Anne Cara Oil Co., Inc.)*, 32 B.R. 643 (Bkrtcy.D.Mass.1983) (contractual rights which expired by their terms after filing of petition prior to debtors taking action could not be revived). As alternative grounds for granting injunctive relief, debtor invokes the court's equitable power, pursuant to 11 U.S.C. § 105(a) to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of ... title [11]" as grounds for requiring Wilson to fill cash orders for goods. *See Ike Kempner & Bros., Inc. v. U.S. Shoe Corp. (In re Ike Kempner & Bros., Inc.)*, 4 B.R. 31 (Bkrtcy.E.D.Ark. 1980) (enjoining shoe supplier to fill post-petition orders upon assurances of payment). Defendant has submitted no authority compelling a contrary result or in any way attempted to distinguish these cases.

The fundamental requirements for issuance of an injunction in the federal courts are a showing that one party will suffer irreparable harm unless the other party is restrained from taking a threatened action and that there is no adequate remedy of law. *See, e.g., Beacon Theatres v. Westover*, 359 U.S. 500, 506–07, 79 S.Ct. 948, 954, 3 L.Ed. 2d 988 (1959); *Gilley v. United States*, 649 F.2d 449, 454 (6th Cir. 1981). In the present case, plaintiff has met its burden of showing a serious threat of irreparable injury to its business and the lack of an adequate remedy at law. Furthermore, balancing the equities between the parties and considering the public interest, the Court holds that sound discretion favors the issuance of an injunction.

Plaintiff has no adequate remedy at law. "An 'adequate remedy at law' is a remedy that is plain and complete and as practical and efficient to the ends of justice as the remedy in equity by injunction." *Usaco Coal Co. v. Carbomin Energy, Inc.*, 689 F.2d 94, 99 (6th Cir.1982). In the present case, it would be difficult, if not impossible, to ascertain the damages resulting to plaintiff resulting from defendant's failure to ship Wilson sporting goods. It seems clear, however, that, given the prominence of Wilson goods and debtor's past sales of Wilson products, debtor has and will suffer direct loss of profits if an injunction did not issue.

Even so, the more critical remedy that equity alone would provide in this case is to promote the success of this reorganization effort and to help prevent the extinction of debtor's business. "The fundamental purpose of reorganization is to prevent a debtor from going into liquidation, with an attendant loss of jobs and possible misuse of economic resources." *NLRB v. Bildisco & Bildisco*, — U.S. —, —, 104 S.Ct. 1188, 1197, 79 L.Ed. 2d 482, 497 (1984). Although debtor failed to show that the present reorganization effort would fail absent issuance of the injunction, given the above policy and the inherent difficulty in making such a showing in the early stages of a reorganization effort, the better policy would be that, given a showing of significant injury to debtor's business, the court could presume that it would render the reorganization difficult or impossible. Clearly, assessment of damages would not compensate for the possible permanent

damage to or loss of debtor's sole business resulting from defendant's action in this case. "An injunction is proper to prevent the threatened extinction of a business." *Engine Specialties, Inc. v. Bombardier Ltd.*, 454 F.2d 527 (1st Cir.1972).

The circumstances leading to the finding of a lack of an adequate remedy of law in this case also demonstrates the fact that the threatened injury would be irreparable.

If an injury cannot be adequately remedied at law, because damages would be either inadequate or unascertainable, the injury is generally held irreparable. *Ohio Oil Co. v. Conway*, 279 U.S. 813, 49 S.Ct. 256, 73 L.Ed. 972 (1929). Thus, the requirements of irreparable injury and lack of adequate legal remedy merge.

*International Ass'n of Firefighters, Local 2069 v. City of Sylacauga*, 436 F.Supp. 482, 492 (N.D.Ala.1977). Here the possible loss of profits and resulting damage to or failure of this reorganization effort, in addition to requiring an equitable remedy, constitute a threat of irreparable harm.

Having once met the prerequisites for issuance of an injunction, the more significant factor in the Court's grant of equitable relief in this case is the Court's consideration of the equities involved. "As a general matter it may be said that '[s]ince all or almost all equitable remedies are discretionary, the balancing of equities and hardships is appropriate in almost any case as a guide to the [court's] discretion.'" *Tennessee Valley Author. v. Hill*, 437 U.S. 153, 194, 98 S.Ct. 2279, 2301, 57 L.Ed.2d 117, 146 (1978). *See also, Weinberger v. Romero-Barcelo*, 456 U.S. 305, 102 S.Ct. 1798, 72 L.Ed 2d 91 (1982). The possible harm to debtor and its reorganization effort in this case, detailed above, has already been discussed. Defendant, by contrast, has made no showing and made no arguments that it would suffer any harm by being required to accept cash for selling goods to plaintiff and turning a profit. Furthermore, to the extent that an injunction would promote the success of the reorganization effort in this case, it will increase the possibility of defendant and all of the creditors in this case being paid the money owed to them.

Finally, public policy favors issuance of an injunction in this case. Defendant's action, in violation of the automatic stay, should be remedied by way of injunction. Also, ignoring the coercive effect of defendant's refusal to do business with debtor, its motive can only be explained by spite or ill-will towards the debtor and its effort to emerge as a successfully reorganized entity. An injunction in this case pursuant to § 105(a) of the Code is thus "necessary or appropriate" to carry out the provisions of Title 11.

There remains the question of the terms and duration of the order. The debtor shall be required to pay cash either in advance of or upon receipt of goods. Upon receipt of debtor's order, Wilson should ship goods without undue delay and shall not unreasonably discriminate against debtor's orders. As far as possible, the parties shall operate on a normal business relationship consistent with their previous course of dealing over the past ten years. Although debtor has requested an order of unlimited duration, the spirit of this order, to remedy the violation of stay and promote the rehabilitation effort, can only justify its continuance through the course of this reorganization proceeding.

## PREFERENCES

■ Plaintiff's second cause of action is to avoid certain allegedly preferential transfers of property pursuant to 11 U.S.C. § 547(b). This section provides as follows:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between 90 days and one year before the date of the filing of the petition, if such creditor, at the time of such transfer—

(i) was an insider; and

(ii) had reasonable cause to believe the debtor was insolvent at the time of such transfer; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under Chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

In order to avoid a transfer as preferential, all five of the elements enumerated above must be established, *Waldschmidt v. Ranier (In re Fulghum Constr. Corp.)*, 706 F.2d 171 (6th Cir.) *cert. den.*, — U.S. —, 104 S.Ct. 342, 78 L.Ed. 2d 310 (1983), by a preponderance of the evidence. 4 *Collier on Bankruptcy* ¶ 547.55 at 547–160.17 (15th ed.1979). In addition, § 547(b) is, by its own terms, subject to certain "defenses" available to creditors listed in § 547(c) which, if applicable, may preclude the trustee from avoiding a transfer or limit the extent to which a transfer is preferential.

The evidence adduced at trial on the question of preferential transfers showed the following facts. On November 19, 1982 and December 6, 1982 debtor transmitted two checks payable to defendant in the amounts of $4,446.59 and $3,000.00 respectively. These checks were issued to Wilson in payment of goods shipped to debtor on or before June 18, 1982. All of the goods ordered were received by debtor on or before June 22, 1982.

According to terms of the invoices sent to debtor, payment for the goods pertaining to the check of November 19, 1982 was due on or before September 10, 1982. Payment for the goods pertaining to the December 6, 1982 check was due on or before October 10, 1982. On December 3, 1982, plaintiff received goods from defendant of a value of $289.74 for which plaintiff received neither payment nor security. For the transactions in issue, the checks transmitted to defendant were directed toward and applied against the particular invoices in issue. With regard to other transactions, when plaintiff sent defendant a check and the check was not directed toward a particular invoice, the practice of the parties was that the payment would be applied against the oldest invoices.

Debtor filed its voluntary petition under Chapter 11 of the Bankruptcy Code on February 14, 1983. At that time debtor had liabilities totalling approximately $1,500,-000.00 and property of an approximate value of $900,000. Of its total indebtedness, $587,281.00 was secured by estate property.

On cross-examination, Frank M. Shible, debtor's secretary and treasurer, stated that debtor made "preferential" transfers under § 547(b) to other creditors in the amount of $100,000.

■ Regarding the facts of this case, defendant does not seriously contest that the criteria under § 547(b)(1),(3), and (4) have been met. Thus, the checks drawn by plaintiff were "transfers" under § 101(41) of the Bankruptcy Code, of property of the debtor. The transfers were to or for the benefit of Wilson, a creditor. They were made at a time when debtor's liabilities exceeded its assets, meeting of § 101(26)'s definition of insolvency. And, last of all, they were made within 90 days of the filing of the petition on February 14, 1983.

Also, it cannot seriously be contested that the transfer was "for or on account of an antecedent debt owed by the debtor before such transfer was made" under § 547(b)(2). As will be more fully discussed *infra* in connection with defendant's attempted defense under § 547(c)(2), the debt was created when debtor received the goods in question on or before June 22, 1982. The checks in question were drawn and transmitted on November 19, 1982 and December 6, 1982 and related in each instance to the precedent shipments and in-

voices. Thus, § 547(b)(2)'s requirements have been met.

The last element of a preference required to be proven is that under § 547(b)(5) that the transfer:

> (5) that enables such creditor to receive more than such creditor would receive if—
>> (A) the case were a case under Chapter 7 of this title;
>> (B) the transfer had not been made; and
>> (C) such creditor received payment of such debt to the extent provided by the provision of this title.

Under the circumstances of this case, this test has been satisfied.

For the transactions in issue in this case, defendant received 100% of the money due them as a result of the transfers in question. If this were a case under Chapter 7 of the Code, and including the sum of the two checks transferred, it appears that from the funds available for distribution to unsecured creditors under § 726 of the Code, based upon the unencumbered portion of debtor's estate, defendant would receive approximately 20% of its claim. It thus appears that the transfer enabled defendant to receive more than it would otherwise have received under the distribution provisions of Chapter 7 if the transfer had not been made and, therefore, § 547(b)(5)'s requirements have been met.

As an affirmative defense, defendant asserts that plaintiff is barred from bringing this claim by virtue of plaintiff's failure to join other indispensable parties to this litigation, to wit, other creditors of this estate who have assertedly received preferential transfers. In support of this defense, testimony was elicited from debtor's secretary/treasurer on cross-examination that debtor may have made preferential transfers to other creditors in the amount of $100,000. Assuming *arguendo* that plaintiff in fact made such transfers and that they were preferential, this Court is aware of no authority supportive of defendant's contention that such parties are needed for just adjudication of this controversy. Fur-thermore, having examined the criteria of Rule 19(a) Fed. R. Civ. P. and the purpose and construction given this rule, *see Wright & Miller*, Federal Practice and Procedure: Civil § 1602 (1972), the court rejects defendant's assertion that it should be applied to bar adjudication of plaintiff's claim. Defendant has supplied no authority, reasoning, or analysis to the contrary.

Also, defendant claims a defense in § 547(c)(2) of the Code. This provides that the trustee may not avoid a transfer under § 547(b)

> to the extent that such transfer was—
>> (A) in payment of a debt incurred in the ordinary course of business or financial affairs of the debtor and the transferee;
>> (B) made not later than 45 days after such debt was incurred;
>> (C) made in the ordinary course of business or financial affairs of the debtor and the transferee; and
>> (D) made according to ordinary business terms ...

This defense is composed of four elements, all of which must be present if it is to operate in favor of the creditor. *In re Gulf States Marine, Inc.*, 6 BCD 79 (Bkrtcy.W.D.La.1980). In this case, element (B) being absent, the court need go no further and determine if elements (A), (C), and (D) are present. The defense fails.

In the case *sub judice*, each transfer was made more than 45 days after each debt was incurred. Although Congress has not defined when a debt is incurred, case law holds that a debt is "incurred" on the date upon which the debtor first become legally bound to pay. *See, e.g., Iowa Premium Service Co. v. First National Bank (In re Iowa Premium Service Co., Inc.)*, 695 F.2d 1109, 1111 (8th Cir.1982); *Sandoz v. Fred Wilson Drilling Co., (In re Emerald Oil Co.)*, 695 F.2d 833, 837 (5th Cir.1983); *Barash v. Public Finance Corp.*, 658 F.2d 504, 511 (7th Cir.1981). Thus, it has been held that debts are incurred when services are rendered or when debtor obtained a property interest in goods, not when an invoice is

sent. *Rovzar v. Prime Leather Finishes Co. (In re Saco Local Dev. Corp)*, 30 B.R. 859, 861, 10 BCD 962, 963 (Bkrtcy.D.Me. 1982); *Trauner v. Stephenson Associates, Inc. (In re Valles Mechanical Industries, Inc.)*, 20 B.R. 350, 353, 9 BCD 334, 335 (Bkrtcy.N.D.Ga.1982). In the present case, the debt was "incurred" under § 547(c)(2)(B) no later than when the goods were delivered. *See, In re Saco Local Dev. Corp., supra*, 30 B.R. at 861, 10 BCD at 963. Since the goods were delivered and the debt incurred, in each case, on or before June 22, 1982 and more than 45 days passed before the checks were transmitted on November 19, 1982 and December 6, 1982, the "ordinary course of business" exception is inapplicable.

Debtor does admit, however, that Wilson shipped goods of a value of $287.14 to debtor after the date of the November 19, 1982 transfer and, therefore, to this extent, the transfer is unavoidable. 11 U.S.C. § 547(c)(4). The debtor may recover then the value of the property transferred under 11 U.S.C. § 550(a), $7,446.59, less the amount of new value received, $287.14, or $7,159.45 as a preference.

For the foregoing reasons, it is hereby,

ORDERED that the Wilson Sporting Goods Company, its officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of this order by personal service or otherwise be, and hereby are, enjoined and restrained as follows: Wilson shall ship goods to Sportfame of Ohio, Inc. on its order upon receipt of cash in advance or upon arrangement for cash on delivery; Wilson shall ship goods without undue delay and shall not unreasonably discriminate against Sportfame's orders; as far as possible, Wilson and Sportfame shall transact business on a normal basis consistent with their dealings for the past 10 years. It is further,

ORDERED that this injunction be effective until the later of the time this case is dismissed or converted or all payments under a confirmed plan of reorganization have been completed. It is further,

ORDERED that Sportfame of Ohio, Inc. have judgment against the Wilson Sporting Goods Company in the amount of $7,159.45 as a preferential transfer.