In re CAHOKIA DOWNS, INC., a Delaware Corporation, Debtor.

HOLLAND AMERICA INSURANCE COMPANY, a Missouri Corporation, and Sayre & Toso, Inc., a California Corporation, Plaintiffs,

v.

SPORTSERVICE, INC., a Subsidiary of Delaware North Companies, Inc., Cahokia Downs, Inc., an Illinois Corporation, Mark Twain Bank, Logger Insurance Agency, Inc., Cahokia Land Trust, c/o Patrick S. O'Neill, Defendants.

Civ. No. 80–0094.

United States Bankruptcy Court, S. D. Illinois.

June 25, 1980.

John H. Marshall, Chicago, Ill., and Thomas Q. Keefe, Jr., Belleville, Ill., for Holland America Ins. Co. and Sayre & Toso, Inc.

John M. Ferguson, Belleville, Ill., Leonard Gesas, Chicago, Ill., and Marvin Dubin, for Sportservice, Inc.

Donovan, Hatch & Constance, Belleville, Ill., Patrick S. O'Neill, Alton, Ill., Trustee of the Cahokia Land Trust.

A. J. Nester, Belleville, Ill., for Logger Ins. Agency, Inc.

ORDER DENYING COMPLAINT TO TERMINATE STAY

J. D. TRABUE, Bankruptcy Judge.

At East St. Louis, in said district, this matter having heretofore come before the

Court for hearing upon the complaint for request to terminate stay filed on behalf of Holland America Insurance Company and Sayre & Toso, Inc., by and through their attorneys, John H. Marshall and Thomas Q. Keefe, Jr.; and the answers of Sportservice, Inc., filed by John M. Ferguson, Leonard Gesas and Marvin Dubin, its attorneys; Logger Insurance Agency, Inc., filed by Donovan, Hatch & Constance, its attorneys; and Patrick S. O'Neill, Trustee of the Cahokia Land Trust , filed by A. J. Nester, one of its attorneys; and the Court, having heard the testimony of witnesses and arguments of counsel, and having considered the briefs filed on behalf of the various parties, finds as follows:

1. Cahokia Downs, Inc. is a Delaware Corporation which has operated a race track and owns track facilities on land leased from Cahokia Land Trust.

2. Sportservice, Inc. is the largest creditor of Cahokia Downs and filed an involuntary Chapter 11 on April 2, 1980.

3. Pursuant to the consent of Cahokia Downs, Inc., an order of relief was entered on said petition, and there are at present efforts being made to formulate a plan of arrangement.

4. Sometime in July, 1979, Holland America Insurance Company and Cahokia Downs, Inc. entered into a policy of insurance under policy No. FN 013505, being a standard fire policy with a policy period of July 26, 1979 to July 26, 1980, insuring the race track premises.

5. Sayre & Toso, Inc. is the underwriter of said policy.

6. Logger Insurance Agency, Inc., acting as agent of Cahokia Downs, Inc., obtained the policy of insurance and advanced the full premium payment on behalf of Cahokia Downs, Inc. in the amount of $32,309.

7. Cahokia Downs, Inc. is indebted to Logger Insurance Agency for said premium and also to Mark Twain National Bank on a loan agreement for payment of a portion of the policy premium in the approximate amount of $14,000.

8. The race track operated on a seasonal basis, and for a part of each year is completely shut down except for a custodian and certain employees.

9. On April 11, 1980, without prior consent of this Court and after filing of the petition in this matter, the plaintiff, Sayre & Toso, attempted to cancel the policy of insurance on behalf of the plaintiff, Holland America Insurance Company, pursuant to a clause in the contract allowing Holland America Insurance Company to cancel upon thirty days written notice.

10. Sportservice, Inc., the principal creditor, filed a petition for injunctive relief against the cancellation, and, in that matter, this Court held that, while service had not been perfected, the automatic stay was statutory and applied to the cancellation of the insurance. Pursuant to the prior order of this Court, the plaintiffs have now filed this complaint for request to terminate the automatic stay.

11. The primary differences between the status of the insured property in 1979 and the present time are that in approximately October, 1979, the Illinois Racing Commission denied racing dates for the Spring and Summer of 1980 to the debtor, and the subsequent filing of this Chapter 11 on April 2, 1980.

12. No attempt was made to cancel the insurance policy because of the cancellation of racing dates until April 11, 1980.

13. The maintenance of insurance on the property is essential for the rehabilitation of the debtor and the protection of the creditors.

14. The evidence indicates that the real reason for the attempted cancellation of the insurance was the filing of the bankruptcy proceeding under Chapter 11.

The enactment of the Bankruptcy Code in 1978 greatly enlarged the scope and powers of the Bankruptcy Court. One of the expressed aims of Congress in enacting the Code was to give the Bankruptcy Court sufficient power to enable it to protect the rights of the parties in interest—the debtors and creditors—and, in the case of ar-

rangements, to effect the rehabilitation of the debtor. To that end, Congress enacted the following:

11 U.S.C. § 105

"(a) The bankruptcy court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

11 U.S.C. § 362

"(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

(7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and

(8) the commencement or continuation of a proceeding before the United States Tax Court concerning the debtor."

11 U.S.C. § 363

"($l$) The trustee may use, sell, or lease property under subsection (b) or (c) of this section, or a plan under chapter 11 or 13 of this title may provide for the use, sale, or lease of property, notwithstanding any provision in a contract, a lease, or applicable law that is conditioned on the insolvency or financial condition of the debtor, on the commencement of a case under this title concerning the debtor, or on the appointment of a taking possession, by a trustee in a case under this title or a custodian, and that effects, or gives an option to effect, a forfeiture, modification, or termination of the debtor's interests in such property."

11 U.S.C. § 365

"(a) * * * [T]he trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."

Each of these sections creates very broad powers and is applicable to a debtor under an arrangement as well as the Trustee-in-Bankruptcy. In the instant case, there is no question but that a policy of insurance, especially one in which the premium has been paid, is a valid and binding contract between the insurance company and the insured and would constitute an asset of the bankrupt estate. Furthermore, fire insurance is a necessary protection for both the debtor and its creditors. The cancellation of the insurance would certainly come within the provisions of the automatic stay under § 362(a)(3). It is also property which could, within the meaning of § 363, be used by the Trustee, and certainly paragraph ($l$) of § 363 would be applicable to the cancellation provision in spite of the fact that the provision does not refer to insolvency or the financial condition of the debtor. This is especially true when, as in the instant case, it is quite obvious that the prime reason for the attempted cancellation of the insurance was the bankruptcy.

While the plaintiffs have asserted that their reason for the cancellation of the insurance was the vacancy of the building and the inadequacy of protection, there is, and was, no proof that there was a substantial change in that situation as a result of the bankruptcy. All of the things which the insurance company cited as being indicative of increased risk existed long before the attempted cancellation and the bankruptcy. In fact, a number of them existed and were known to the insurance company at the time of the creation of the original policy. The principal change subsequent to the inception of the policy was the loss of racing dates for the Spring and Summer of 1980, which occurred in October. This was many months before the actual filing of the bankruptcy, and consequently was, or should have been, known by the insurance company. In addition, since only a month remains on the insurance policy, should this Court allow the company to cancel its policy, the rebate and the premium would assuredly be minimal and would, accordingly, cause an increased cost to the debtor's estate in obtaining additional insurance. Therefore, even if additional insurance were available, there is no showing that it would be at a lesser price. It is, of course, understood and not contemplated by this Court that the insurance policy should or could be extended beyond its original term.

The case cited by the plaintiffs, *In re Merritt Lumber Co.*, 336 F.Supp. 325 (E.D. Pa.1971), appears to be within the scope of the findings by this Court in the instant matter. Furthermore, *In the Matter of R. S. Pinellas Motel Partnership*, 2 B.R. 113, 5 BCD 1292, 1 C.B.C. 2nd 349 (Bkrtcy.M.D. Fla.1979), supports the position of this Court that the new Bankruptcy Code is extremely broad in giving the Bankruptcy Court jurisdiction and broad powers over the contractual relations of a debtor in order to permit the debtor's rehabilitation.

WHEREFORE, IT IS ORDERED that the plaintiffs' petition for termination of the automatic stay be and the same is hereby denied.