**In re ADVENT CORPORATION, Debtor.**

**Appeal of FIDELITY & DEPOSIT COMPANY OF MARYLAND.**

**Bankruptcy No. 81–9035.**

United States Bankruptcy Appellate Panel for the First Circuit.

Argued Jan. 28, 1982.

Decided Nov. 29, 1982.

Harvey Weiner, Dennis P. Crimmins, Boston, Mass., for appellant.

Peabody & Arnold, Robert Somma, Robert F. Wechsler, Co-counsel to Advent Corp.

Goldstein & Manello, William F. Weld, U.S. Atty., Joseph S. Ackerstein, Asst. U.S. Atty., John deRomoet, Regional Counsel, Christopher Doherty, Asst. Regional Counsel, United States Customs Service, Boston, Mass., for appellee, United States of America.

Before VOTOLATO, Chief Judge, and JOHNSON and GOODMAN, Bankruptcy Judges.

PER CURIAM.

Fidelity & Deposit Company of Maryland filed this appeal from an order of the bankruptcy court requiring it to issue a bond protecting the debtor, Advent Corporation. We vacate that order, and remand with instructions.

Advent Corporation, engaged in the manufacture and sale of audiovisual equipment, filed a voluntary chapter 11 petition on March 17, 1981. Advent regularly receives shipments of imports into the United States from abroad. Pursuant to 19 U.S.C. § 1499 (1980), in order for imported merchandise to be released from the custody of the United States Customs Service (Customs) to an importer, a bond or other security is required to be in effect. Prior to the March 17 filing date, Fidelity & Deposit Company of Maryland (F & D) had issued a $100,000 general term bond [1] to cover all of Advent's imports through October 9, 1981.

On June 28, 1981, Customs received from F & D a notice of cancellation of the $100,000 general term bond. The notice set July 25, 1981 as the effective date for cancellation. On Advent's application, after a hearing, the bankruptcy court ordered F & D on July 24 to "reinstate the Bond in the amount and under the terms and conditions of the present Bond." From the record before us, it cannot be determined whether Customs received notice of, or appeared at, that hearing. That order was not appealed.

F & D attempted to comply with the court's order, but Customs refused to reinstate the $100,000 bond because of alleged "procedural problems" with their own computer programming. At oral argument, counsel admitted that had the bankruptcy court ordered Customs to "reinstate" the bond, it would have done so.

Believing (and reasonably so, based on the position taken by Customs) that the $100,000 general term bond had been terminated, Advent and F & D subsequently agreed to the issuance of five single entry bonds totalling $88,600 which covered five separate import shipments. In September, however, when Advent requested a single entry bond to cover a shipment of approximately $220,000, F & D refused to issue a bond in that amount.

On September 24, 1981, Advent filed an application with the bankruptcy court to compel F & D to issue such a bond, and notice of an emergency hearing to be held on September 29 was given to F & D and Customs. Over F & D's objection, the court ordered that upon payment by Advent of $20,306.90,[2] F & D and Customs were to "issue forthwith to the Debtor, and facilitate the effectiveness of, a single entry bond in the amount of $241,600.00."

---

1. A general term bond covering entry of merchandise secures, *inter alia,* payment of duties owed to the United States Customs Service by an importer on imports through one port of entry during a period not exceeding one year. 19 C.F.R. § 113.14(s). An alternative bond that satisfies the requirements of 19 U.S.C.

§ 1499 is a single entry bond, which secures payment of duties assessed upon a single transaction. 19 C.F.R. § 113.14(g).

2. This amount equaled the estimated customs duty due for the shipment in question.

F & D moved in the bankruptcy court for a stay pending appeal or, in the alternative, for classification of any claim of F & D arising under the disputed order as an administrative expense. The bankruptcy court refused to grant the stay, but allowed the alternative relief. F & D complied with the court's order, issuing a $241,600 single entry bond, and the shipment in question was received on or before October 7, 1981.

■ On appeal, F & D contends that the bankruptcy judge erred in ordering F & D to issue a bond in excess of its maximum contractual liability under the "terminated" $100,000 bond. Generally, a bankruptcy court may not extend a contract beyond its original terms. The Bankruptcy Code neither enlarges the rights of a debtor under a contract, nor prevents the termination of a contract by its own terms. *In re Douglas,* 18 B.R. 813, 815 (Bkrtcy.W.D.Tenn.1982); *In re Nashville White Trucks, Inc.,* 5 B.R. 112, 117, 2 C.B.C.2d 512, 517 (Bkrtcy.M.D. Tenn.1980); *see also In re R.O.A.M., Inc.,* 15 B.R. 616, 617, 8 B.C.D. 666, 667 (Bkrtcy.D. Nev.1981) (dicta); *In re Cahokia Downs, Inc.,* 5 B.R. 529, 532, 6 B.C.D. 925, 927, 2 C.B.C.2d 988, 992 (Bkrtcy.S.D.Ill.1980) (dicta).

■ Under 11 U.S.C. § 362, the filing of a petition under Title 11 stays any proceeding against the debtor. An attempt to cancel a bond is a proceeding. *In re R.O. A.M., Inc.,* 15 B.R. at 617, 8 B.C.D. at 667. "The stay created by § 362 is an automatic statutory stay. 'Actions taken in violation of the stay are void and without effect.'" *In re Young,* 14 B.R. 809, 811, 8 B.C.D. 641, 641 (Bkrtcy.N.D.Ill.1981) *quoting 2 Collier on Bankruptcy* ¶ 362.11 (15th ed. 1979). Acts done in violation of the stay are void *ab initio* regardless of lack of knowledge of the filing of the petition. *Id.; In re Wariner,* 16 B.R. 216, 218, 5 C.B.C.2d 865, 866 (Bkrtcy.N.D.Tex.1981); *In re Miller,* 10 B.R. 778, 780, 4 C.B.C.2d 530, 532 (Bkrtcy.D.Md. 1981). Accordingly, we conclude that the action taken by F & D and Customs to render ineffective the $100,000 general

term bond was of no effect, and that the bond continued to cover shipments until it expired by its own terms on October 9, 1981, with the debtor entitled to the full benefit of its original bargain with F & D, until October 9, 1981.

■ Customs argues that the $241,600 bond should not be rescinded because Customs relied on the existence of a bond in that amount in releasing the $220,000 shipment to Advent, while F & D failed to obtain a stay of the order pending this appeal. This argument is entitled to no deference, since any problem facing Customs in this respect must be termed "self-inflicted." Customs, with respect to its obligation to honor the original $100,000 bond, together with its belated admission that it would have recognized that bond had the court ordered it to do so, is in the position of being estopped, as a matter of law, from asserting the equitable arguments that it now makes. *Cf.* Bankruptcy Rule 805 (Unless an order approving a sale of property is stayed pending appeal, the sale to a good faith purchaser shall not be affected by the reversal of such order on appeal).

It also appears that Customs violated its own regulations when it attempted to effect the termination of the $100,000 bond on July 25. Termination of a bond on Customs Form 7595 (such as the $100,000 general term bond in question) upon request of the surety, without the consent of the principal, does not take effect until the 60th day after approval by the District Director of Customs. 19 C.F.R. § 113.26(d)(3). Here, Customs received notice of F & D's termination request on June 28, yet purported to terminate the bond on July 25, well within 60 days. Had Customs observed its own internal regulations, it would have been in compliance with the July 24 order to continue the $100,000 term bond in effect.

We vacate the bankruptcy court's September 29, 1981 Order, and remand the

matter to that court, with instructions to take appropriate action to effect the rescission of the $241,600 single entry bond. Any purported termination by F & D or Customs prior to October 9, 1981 of the $100,000 general entry bond is declared to have been ineffective, and the liability of the parties is limited to their exposure under that document.