ADVISORY INFORMATION AND MANAGEMENT SYSTEMS, INC., Plaintiff-Counterdefendant,

v.

PRIME COMPUTER, INC., Defendant-Counterclaimant

v.

W.R. CARGILE, Sr., et al., Counterclaim Defendants.

No. 3–83–0972.

United States District Court, M.D. Tennessee, Nashville Division.

June 20, 1984.

Daniel C. Kaufman, Paul E. Jennings, Waddey & Newport, Nashville, Tenn., for W.C. Cargile, Sr., and plaintiff-counterdefendant.

Steven A. Riley, Bass, Berry & Sims, Nashville, Tenn., James C. Burling, David H. Erichsen, Hale & Dorr, Boston, Mass., for defendant-counterclaimant Prime Computer.

Thomas Wardlaw Steele, Nashville, Tenn., for Southern States Corp.

### MEMORANDUM

THOMAS A. WISEMAN, Jr., District Judge.

This matter is before the Court on motion by defendant Prime Computer, Inc. [Prime], for a stay and withdrawal of proceedings filed in bankruptcy court by plaintiff Advisory Information and Management Systems, Inc. [AIMS]. AIMS filed for reorganization under Chapter 11 of the Bankruptcy Reform Act, 11 U.S.C. § 1101 *et seq.* on July 15, 1983. Since that time it has continued in the business of dealing in various lines of computer systems, equipment, components, and related goods. Prime has been one of the main suppliers for AIMS under an agreement executed on July 1, 1979, [the Agreement], whereby Prime appointed AIMS' predecessor in interest as the exclusive dealer of "INFORMATION" Software for Prime in Tennessee and gave it primary responsibility to sell and market Prime products in the State. On September 4, 1980, AIMS' rights as successor dealer became effective. This Agreement provided that the dealer had the right to sell systems and products listed on a schedule that could from time to time be amended, and authorized sales outside of the dealer's primary area. This schedule generally included new products and upgrade equipment as they were developed. *See* Complaint for Injunctive Relief in Aid of Reorganization ¶¶ 8–11. This Agreement was amended in September 1982 to provide that additions to and deletions from the schedule must be made with the consent of Prime, but that consent "shall not be unreasonably withheld." *Id.* Exhibit 1.

In July of 1983, Prime offered for sale the Model 9950 system, a highly sophisticated system that is much in demand by customers who desire a multi-function, multi-user system. Prime would not let dealers such as AIMS distribute the 9950 without becoming part of Prime's "Authorized Distributor Program."

After AIMS filed in bankruptcy, Prime gave notice that AIMS was in default of its Dealer Agreement because it had filed a petition for reorganization. Prime also asserted a provision of the Agreement allowing the seller to discontinue shipments or force cash on delivery payment if payments due exceeded a buyer's credit limit. *See* Exhibit 2 to Plaintiff's Complaint for Injunctive Relief in Aid of Reorganization. Prime now requires all orders from AIMS to be accompanied by certified check, cash-

ier's check or irrevocable letter of credit. *See id.* Exhibit 3. On May 8, 1984, the day after filing its Complaint for Injunctive Relief in Aid of Reorganization pursuant to 11 U.S.C. § 105(a),[1] AIMS filed a Motion for Interim Injunctive Relief under that same section. Apparently objecting to payment terms and lateness of filling orders as well as Prime's refusal to provide AIMS with 9950 systems, AIMS sought an order enjoining Prime, *pendente lite:* "from unreasonably withholding or delaying approval of application software, from unreasonably delaying its processing of orders placed by AIMS, and from refusing to sell its Model 9950 system and upgrades to AIMS." Memorandum in Support of Motion for Interim Injunctive Relief p. 3. In its Complaint for Injunctive Relief in Aid of Reorganization at page 7 AIMS also requested an injunction preventing Prime from "otherwise unreasonably discriminating against AIMS."

Defendant Prime filed a motion for a stay of related proceedings and withdrawal of AIMS' injunctive action from the bankruptcy court. Prime asserts that AIMS is attempting to secure the same relief in bankruptcy court that it seeks in its antitrust and contract actions before this Court, that AIMS is seeking to undercut its contract with Prime, and that the bankruptcy court's general equitable powers under section 105(a) do not extend to orders requiring Prime to continue business with AIMS.

AIMS' antitrust action was filed with this court on December 16, 1983, prior to the action for injunctive relief in the bankruptcy court. Along with its claim that Prime violated the Sherman Act, 15 U.S.C. §§ 1 *et seq.*, AIMS also alleged breach of contract, interference with contractual relations, and unfair trade practices. AIMS challenged Prime's refusal to fill orders placed by AIMS for ultimate distribution to resellers, such as DataMation, Inc., who would compete with Prime's direct sales force. AIMS also challenged Prime's actions in attempting to persuade others to discontinue dealing with AIMS and Prime's efforts to organize a boycott of DataMation. AIMS seeks monetary and injunctive relief in its action before this Court.

Prime contends that the section 105(a) injunction action is a "related proceeding" under the Emergency Rule of this Court, Administrative Order 28–1, reinstated in Administrative order 28–8. Under the Emergency Rule, provision (e)(2)(A)(iii), district courts automatically review related proceedings whether or not there is any appeal from the bankruptcy court. Non-related proceedings are not subject to this automatic review. Bankruptcy courts may not enter final judgments in related proceedings, but may only enter proposed conclusions and findings unless the parties consent. (d)(3)(B). A district court, whether on motion by a party or on its own motion, may withdraw matters referred to bankruptcy court and retain the entire matter or refer the matter back to the bankruptcy judge in whole or in part. (c)(2).

Related proceedings are "civil proceedings that, in the absence of a petition in bankruptcy, could have been brought in a district court or a state court." (d)(3)(A). Related proceedings include claims by the estate against parties who have not filed claims against the estate. Related proceedings do not include core proceedings such as matters involving the administration of the estate, counterclaims by the estate, preferences, objections to discharge and similar matters. *Id.* Matters directly involved in administration of the estate are not related proceedings.

■ AIMS' action for interim injunctive relief in the bankruptcy court, which seeks to enjoin Prime from "unreasonably" denying sales of software to AIMS, is a "related proceeding." Although the action affects AIMS' viability under its reorganization plan, it involves questions identical to those in the antitrust and contract case before this Court. AIMS seeks to have the bankruptcy court order that Prime make available a type of computer system that prime

---

1. Section 105(a) provides: The bankruptcy court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.

now sells directly through distributors and does not sell to dealers such as AIMS. Bankruptcy relief on this issue, since it could involve the likelihood of success on the merits, *see* Memorandum in Support of Motion for Interim Injunctive Relief at 4–5, may necessarily require inquiries that go to the heart of the claims before this Court. These claims before the bankruptcy court would then be subject to review by this Court. Withdrawal of this issue from the bankruptcy court is necessary to protect this Court's jurisdiction and to preserve judicial resources.

AIMS argues that the relief it seeks under section 105(a) is separate from the relief it seeks in this Court because the central issue for the bankruptcy court to resolve is whether compelling Prime to sell 9950s to AIMS is essential to reorganization. Section 105(a) does not, however, broadly confer jurisdiction upon bankruptcy courts to grant the relief requested in this case. Section 105 is not a source of jurisdiction for bankruptcy courts. *In re Hall,* 30 B.R. 799, 801 n. 3 (M.D.Tenn.1983) (memo per Nixon, J); *In re Richardson,* 27 B.R. 407, 416–18 (Bkrtcy.D.Utah 1983), *vacated on other grounds sub nom, In re Color Craft Press,* 27 B.R. 962 (D.Utah 1983); *In re Advent Corp.,* 24 B.R. 612, 614 (1st Cir.Bkrtcy.App. Panel 1982) (per curiam). In *In re Richardson,* the court held that section 105(a) does not confer subject matter jurisdiction, but only confers "broad powers to act after subject matter jurisdiction is established." 27 B.R. at 417. Citing the legislative history of section 105, the court held that 28 U.S.C. § 1471 provides the exclusive basis of jurisdiction for the bankruptcy courts. Without section 1471, or some other source of subject matter jurisdiction, the court held, "those powers granted by section 105(a) are useless." *Id.* at 418.

28 U.S.C. § 1471 provides for jurisdiction in the bankruptcy courts "of all cases under title 11." Although section 105 grants bankruptcy courts equitable powers, there is no indication that it should allow bankruptcy courts to grant relief for actions alleged to constitute violations of the antitrust laws. This Court is inclined to exercise caution in determining the scope of a bankruptcy court's jurisdiction to grant relief sought elsewhere in an antitrust action, particularly in light of the Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). In *Northern Pipeline* the Court struck down Congress' broad grant of power to the bankruptcy courts through section 1471 in a case involving rights "independent of ... the reorganization petition that conferred jurisdiction upon the bankruptcy court." 458 U.S. at 84, 102 S.Ct. at 2878, 73 L.Ed.2d at 623–24. The Court emphasized the broad authority of bankruptcy courts by citing section 105(a) and held that bankruptcy courts were exercising powers far too broad for non-Article III courts. 458 U.S. at 85–87, 102 S.Ct. at 2878–80, 73 L.Ed.2d at 624–25. District courts should therefore exercise control to prevent parties from using bankruptcy courts to obtain relief based primarily on allegations of antitrust.

Courts that have exercised powers under section 105 have not applied that section as broadly as AIMS has requested in its Motion for Interim Injunctive Relief in the bankruptcy court. Section 105 does not provide the fully separate remedy that plaintiff has alleged in argument before this Court. Bankruptcy courts have used section 105 to enjoin cancellation of contracts mainly in cases involving lessors of property to a debtor and insurors of a debtor's business, and in cases where dealers have terminated business relations in retaliation for filing under Chapter 11.

*In re R.O.A.M., Inc.,* 15 B.R. 616 (Bkrtcy.D.Nev.1981), involved the cancellation of bonds by an insurance company under a contract that allowed for cancellation upon thirty days notice. Finding that the insurance company canceled the bond because debtor filed in bankruptcy and that the bond was necessary for the debtor's continued operation, the court enjoined cancellation of the contract under section 105 and the court's inherent power to protect the rights of the parties in interest. *Id.* at 617. Because the insurance company had

already reached the limit of its liability, the court emphasized that there was no showing that the insurance company would be further harmed by continuation of the contract.

Similarly, the case of *In re Amber Lingerie*, 30 B.R. 736 (Bkrtcy.S.D.N.Y.1983), involved cancellation of insurance coverage of a debtor's business pursuant to a termination clause in the insurance contract. The court held that a bankruptcy court "has the inherent equitable power, in proper circumstances, to enjoin cancellation of a contract in order to preserve the continuation of the debtor's business." *Id.* at 737 (citing 11 U.S.C. § 105; *In re Trigg*, 630 F.2d 1370, 1373 (10th Cir.1980); *In re Merritt Lumber Co.*, 336 F.Supp. 325 (E.D.Pa. 1971)). "This power," the court held, "may be exercised where such cancellation would 'seriously impair' the reorganization." *Id.* (citing *Queens Boulevard Wine & Liquer Corp. v. Blum*, 503 F.2d 202, 207 (2d Cir. 1974)). The court enjoined cancellation because insurance coverage was necessary and the insurance company offered no evidence of increased risk. *Id.*

The *Queens Boulevard* case, which was decided before section 105 was enacted, involved a contract provision requiring forfeiture of a lease upon filing in bankruptcy. The court held the termination clause was unenforceable because of compelling equitable and policy considerations. 503 F.2d at 206 (citations omitted). Balancing the interests, the court found that continued possession would not prejudice the lessor because it was protected by a security deposit. Forfeiture, however, would destroy a profitable debtor that was unable to relocate and would injure creditors and investors who had aided in the debtor's rehabilitation. *Id.* at 206–07. The court distinguished cases upholding a termination clause because there forfeiture would not have deprived the debtor of "an asset absolutely necessary to its continued viability," and failure to enforce the clause would have resulted in harm to the landlord. *Id.* at 207.

The above cases are distinguishable from the present case. All three cases involve retaliation for filing in bankruptcy while AIMS seeks relief from alleged antitrust violations that Prime applied consistently to all dealers. Retaliation claims are more intimately related to bankruptcy jurisdiction than are claims for relief from refusals to deal allegedly caused by antitrust violations. Additionally, the above cases involved contracts absolutely essential to a debtor's viability and involved little prejudice to the other party. Here the subject matter is one system from one supplier, albeit a major one, for AIMS. Moreover, requiring Prime to sell 9950s to AIMS would grant AIMS the ultimate relief sought in the antitrust and breach of contract actions before this Court and would give AIMS preferential treatment over other dealers. AIMS could avoid Prime's resale limitations and enjoy a competitive advantage, perhaps a subsidy, without any determination of the merits of its antitrust or contract claims. This would work damage to Prime's distribution system in the form of lost profits and added confusion.

*In re Blackwelder Furniture Co., Inc.*, 7 B.R. 328 (Bkrtcy.N.C.1980), was a case where the court preliminarily enjoined suppliers from discontinuing sales to a debtor. Relying on section 105, *id.* at 341, the court ordered three major suppliers of a furniture distributor to continue supplies in order to prevent the reorganization plan from failing. The court found that the balance of harm weighed clearly in favor of the debtor because of the compelling need for supplies, *id.* at 337–38, and the lack of irreparable harm to the suppliers since all shipments were prepaid in cash, *id.* at 340. Although this case initially appears to support AIMS' position that bankruptcy relief is clearly available to compel business relations, it differs from the present case in one important respect. The court in *Blackwelder Furniture* stressed that the debtor sought injunctive relief based only on the claim that the suppliers terminated business relations in retaliation for the debtor filing in bankruptcy. *Id.* at 333–34. The court noted that a *separate* antitrust action involving the same parties was tried in district court and heard in the court of appeals. *Id.* at 334. *See Blackwelder*

*Furniture Co. of Statesville, Inc. v. Seilig Manufacturing Co., Inc.,* 550 F.2d 189 (4th Cir.1977) (ordering preliminary injunction under Rule 65(a) in antitrust case). *Blackwelder Furniture* therefore points toward the position that section 105 relief should be available in cases more closely related to bankruptcy jurisdiction than the claim involved in the instant case.

■ Section 105 may be applied by a bankruptcy court to avoid termination of contracts or business relations where such relief is indispensable to reorganization and necessary to prevent retaliation for exercising rights under chapter 11, and where the relief imposes no substantial burden or hardship on those in contractual relations with a debtor. Section 105 should not be construed to require a bankruptcy court to construct a new contract for reorganization purposes and grant the relief sought elsewhere in an antitrust action. Section 105 should preserve the status quo prior to filing for reorganization rather than create new rights. This is the conclusion of the court in *In re Advent Corp.,* 24 B.R. 612 (1st Cir.Bkrtcy.App.Panel 1982) (per curiam). There the court refused to force a bond company to issue a bond to the debtor in excess of its maximum contractual liability under a bond it had previously terminated. The court held: "Generally, a bankruptcy court may not extend a contract beyond its original terms. The Bankruptcy Code neither enlarges the rights of a debtor under a contract, nor prevents the termination of a contract by its own terms." *Id.* at 614 (citing *In re Douglas,* 18 B.R. 813, 815 (Bkrtcy.W.D.Tenn.1982); *In re Nashville White Trucks, Inc.,* 5 B.R. 112, 117, 2 C.B.C.2d 512, 517 (Bkrtcy.M.D.Tenn.1980)).

In short, the relief AIMS seeks in the bankruptcy court may well represent an enlargement of its rights. Relief granted without a determination of the reasonableness of Prime's distribution system under the antitrust laws would circumvent this Court's authority. Relief granted by a bankruptcy court that involves a determination of the merits of contract and antitrust questions would violate *Northern Pipeline's* mandate of an independent, Article III judiciary.

In its petition before the bankruptcy court, AIMS argued for preliminary relief under Rules 65(a) and (b) of the Federal Rules of Civil Procedure asserting a probable success on the merits of the nonbankruptcy issues of contract interpretation. Memorandum in Support of Motion for Interim Injunctive Relief at 4–5. To grant relief in adversary proceedings, bankruptcy courts are bound to follow Rule 65. Fed.R. Bankr.P. 7065. This requires a determination of the likelihood of success on the merits. *Friendship Materials, Inc. v. Michigan Brick, Inc.,* 679 F.2d 100, 102 (6th Cir.1982). The "merits" *in this case* would be more than just a balance of hardship in AIMS' favor—they must concern substantive law to come fully within the meaning of Rule 65. It is therefore difficult to see how the relief AIMS seeks in bankruptcy court is truly a separate remedy from the injunctive relief it seeks in this Court. AIMS' action in bankruptcy court to force Prime to sell it 9950 systems can only be based on the merits of contract and antitrust claims because Prime's refusal to sell came prior to AIMS' bankruptcy petition and was applied consistently to all dealers, not just AIMS. This matter will remain for consideration in this Court alone. Prime's Motion to Stay and Withdraw Proceedings in Bankruptcy Court will therefore be granted insofar as it concerns Prime's refusal to fill orders for 9950 systems. AIMS remains free to argue for section 105(a) relief in the bankruptcy court regarding its claim that payment terms were unreasonable and in retaliation for AIMS' petition in bankruptcy.