**In re A AND C ELECTRIC CO., INC.,**
**an Illinois corporation, Debtor.**

**Bankruptcy No. 95 B 16749.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Nov. 21, 1995.

Richard H. Fimoff, Harold L. Moskowitz, Robbins Salomon & Patt, Chicago, IL, for debtor.

Edwin H. Conger, David R. Shannon, Chicago, IL, for Electrical Insurance Trustees.

## FINDINGS OF FACT AND CONCLU-SIONS OF LAW ON DEBTOR'S SANCTION MOTION

JACK B. SCHMETTERER, Bankruptcy Judge.

This matter coming to be heard on the Motion of the Debtor, A & C Electric, Inc. ("A & C" or "Debtor"), Emergency Application for Finding of Civil Contempt under Fed.R.Bankr.P. 9020 and for Sanctions under 11 U.S.C. § 362(h), all parties having been present, the Court having heard testimony, taken evidence, and heard the argument of the parties, now makes and enters the following Findings of Fact and Conclusions of Law:

### FINDINGS OF FACT

1. The Debtor is an Illinois corporation that filed its petition for relief on August 16, 1995.

2. The Debtor is engaged in the electrical contracting business and employs electricians who are members of Local 134, International Brotherhood of Electrical Workers ("IBEW").

3. Debtor signed a letter of assent to be bound to a collective bargaining agreement between the Electrical Contractors Association of the City of Chicago, Inc. ("ECACC") and Local Union 134 International Brotherhood of Electrical Workers ("IBEW") and thereby agreed to be bound by the provisions of the Principal Agreement by and between the ECACC and IBEW (effective June 1, 1990) as amended by the Principal Agreement by and between the ECACC and IBEW, effective June 4, 1994 (the "CBA")

4. Article XVIII, Section 13 of the CBA requires signatories to make fringe-benefit contributions to the Electrical Insurance

Trustees (the "Trustees"). The Trustees are the duly appointed and acting trustees under an agreement originally entered into on June 24, 1930, between the Electrical Contractors' Association of City of Chicago and IBEW, and are known as the Electrical Insurance Trustees.

5. Pursuant to Article XVIII, Section 15 of the CBA, the Debtor agreed that it shall not constitute a violation of the CBA for IBEW to remove electricians employed by Debtor if the Debtor is delinquent in wage and fringe benefit payments.

6. Article XXI, Section 1(f) of the CBA provides for the suspension of health and welfare coverage to employees/IBEW members if an employer is delinquent in its fringe benefit contributions.

7. The Trustees administer the Electrical Insurance Trustees Insurance Fund for Electrical Contractors (the "Fund"), and have established and maintained an "employee benefit plan" as defined in Section 3(3) of the Employee Retirement Income Security Act ("ERISA") (29 U.S.C. 1002(3)) (the "Plan"), which provides health and welfare benefits, including payment for medical services, to eligible participants.

8. The Plan, entitled "Medical, Prescription Drugs, Dental, Orthodontia, Vision and Hearing Aid Benefits for Electrical Construction Employees" (Effective June 1992), describes the benefits available to eligible participants. In order to be eligible for benefits under the Plan, an employee must work either 300 hours in the most recent contribution quarter, or 1,200 hours in the most recent four contribution quarters.

9. Subparagraph (g)(1) of Article First of the trust agreement (the "Insurance Agreement") under which Trustees operate as insurance trustees provides as follows:

The Trustees shall have the plenary power to make, from time to time, and to enforce such rules and regulations for the determination of eligibility for benefits, for the proper collection and handling of said Fund, for the allocation of benefits to those

eligible for it, for the determination of who may be beneficiaries and the terms and conditions under which benefits shall be given to the beneficiaries and forfeited by them, and for the determination of methods of procedure and of every other question (irrespective of its nature) arising in the collection and administration of said Fund, and generally in the carrying out of this Agreement, and in fully and completely accomplishing its purpose.

10. Section (o) of Article First of the Insurance Agreement provides:

To the fullest extent permitted by federal law, the Trustees shall have the discretionary authority to determine all questions arising in connection with the Trust Fund ... or as to the construction of the language or meaning of ... this instrument or as to any writing in connection with the operation of the Trust Fund or otherwise and the decision of a majority of the Board of Trustees, if made in good faith, shall be binding upon all persons dealing with the Trust Fund or claiming any benefits thereunder. . . .

11. Many of the projects for which Debtor provides electrical construction services require that the electricians employed by Debtor on such projects be paid prevailing wages under the Davis–Bacon Act, which requires payment at union scale.

12. Prior to filing of its bankruptcy petition on August 16, Debtor had not made certain benefit payments (the "EIT Payments") to the Trustees, pursuant to the provisions of the CBA, for the months of June, July and August, 1995.

13. IBEW sent a letter to the Debtor demanding payment of EIT Payments due from the Debtor for periods prior to the filing of the Petition.

14. Prior to the bankruptcy filing, the Debtor obtained a wage and fringe benefit bond with Frontier Insurance for the purpose of securing, in whole or in part, the amounts to be due the Trustees.

15. On October 5, 1995, the Trustees filed a claim with Frontier Insurance, as surety, claiming that the Debtor owes it $47,160.50 for "wages, welfare fund contributions, and pension fund contributions" that were due to the Trustees.

16. On October 11, 1995, the Trustees filed a proof of claim in this bankruptcy proceeding, asserting that Debtor is indebted to them by reason of the following delinquencies by Debtor:

Schedule of Contributions and Liquidated Damages

| Report Month | Date Due | Liquidated Damages | Contribution Amounts |
|---|---|---|---|
| June 1995 | 7/15/95 | 4,582.45 | 7,519.02 |
| | | | 364.08 |
| | | | 11,868.57 |
| July 1995 | 8/15/95 | 3,200.71 | 14,281.34 |
| August 1995 | 9/15/95 | 173.58 | 1,002.79 |
| | | 1,256.69 | 7,259.36 |
| | | 9,213.43 | 42,295.16 |

17. As of the date of this ruling, the Trustees have taken no steps to ask this Court to lift or modify the automatic stay under 11 U.S.C. § 362.

18. On October 26, 1995, the Trustees sent a letter to all participants in the fund who were employees of the Debtor, a copy of which is Debtor Exhibit 1, informing all of Debtor's employees that, unless there was payment all of pre-petition EIT Payments to the Trustees by November 15, the employees' health and welfare benefits would be suspended on December 1, 1995, if they continued to work for the Debtor.

19. Exhibit 1 further informed them that the suspension would apply only while they were working for the Debtor-employer, and those employees can again become eligible for their benefits if they terminate their employment with the Debtor and are otherwise eligible.

20. The Debtor has sought under 11 U.S.C. § 362(h) [1] to obtain a sanction against the Trustees, asserting their willful violation

---

**1.** 11 U.S.C. § 362(h) permits "an individual" injured by any willful violation of a stay provided

of § 362(a)(6) [2] by attempting through the October 26 letter to collect, assess, or recover from Debtor their claim for delinquent payments due from Debtor prior to commencement of this bankruptcy proceeding.

21. Debtor also served a notice on the Trustees under Fed.R.Bankr.P. 9020 requesting a hearing on its request to hold the Trustees in civil contempt for their asserted violation of the automatic stay under 11 U.S.C. § 362(a)(6). Hearing on this matter was consolidated with hearing on the requested § 362(h) sanctions.

22. The Trustees claim that they were not attempting to collect a pre-petition debt, but were merely informing the employees that their employer was delinquent in its contributions, which delinquency would result in the suspension of their health and welfare benefits. They also claimed that their acts were valid under 11 U.S.C. § 362(a)(3) [3] and 11 U.S.C. § 362(a)(6) as approved in an oral opinion issued by District Judge Leinenweber in an earlier separate case, *In re Midwest Systems, Inc.*, Case No. 94 C 4712 (N.D.Ill.1994).

23. As earlier discussed, the Trustees sought payment of the delinquent pre-petition contributions from Debtor's bonding company. To the extent not paid by that company before December 1, 1995, they seek to obtain the balance from the Debtor, and only from the Debtor. This was evidenced by the testimony of William Wachula (assistant administrator of the Fund) that, even if a third party (other than the bonding company) paid in full the Debtor's obligations to the Trustees, the Debtor's employees' health and welfare benefits would still be suspended if the employees continued to work for the Debtor. The $25,000.00 bond posted by Debtor is not sufficient to pay the arrearage

claims in full, even if the bonding company pays the full amount of the bond. The Trustees have therefore sought the remaining arrearage from the Debtor.

24. The purpose of the October 26 letter was to collect, directly or indirectly, the Trustees' claim against the Debtor by forcing the Debtor to pay the delinquent pre-petition contributions, because union employees normally have and require health and welfare benefits. Suspension of those benefits would serve to discourage those workers from working for Debtor. Thus, the letter threatened Debtor with loss of its employees and was thereby a powerful pressure on Debtor to pay the pre-bankruptcy debt or lose its workers. Loss of workers would collapse the Debtor's business. The transmittal of that letter therefore had the effect of posing an imminent threat to the business operation and existence of the Debtor. Unless that letter is rescinded or the arrearage is paid by December 1, Debtor's Chapter 11 reorganization effort will likely fail after December 1.

25. Fact findings contained in the Conclusions of Law will stand as additional Findings of Fact.

## CONCLUSIONS OF LAW

1. This Court has subject matter jurisdiction over A & C's motions pursuant to 28 U.S.C. § 1334 and General Rule 2.33 of the United States Court for the Northern District of Illinois. These matters constitute a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O). Venue lies properly in this District under 28 U.S.C. § 1409.

2. Under 11 U.S.C. § 362(h), an "individual" harmed by willful violation of the automatic stay may obtain redress. The

by this section shall recover actual damages, including costs and attorneys' fees, and, in the appropriate circumstances, may recover punitive damages.

**2.** 11 U.S.C. § 362(a)(6) states that a filing of a petition for relief under the Bankruptcy Code serves as an automatic stay of . . . "(6) any act to collect, assess or recover a claim against the

debtor that arose prior to the commencement of the case."

**3.** Section 362(a)(3) states that a filing of a petition for relief under the Bankruptcy Code serves as an automatic stay of . . . "(3) any act to obtain possession of property of the estate or of the property of the estate or to exercise control over property of the estate."

Trustees argue that only a human "individual" is protected, not Debtor. The term "individual" in § 362(h) is not defined in the Bankruptcy Code. Some authorities, notably *In re Prairie Trunk Railway*, 125 B.R. 217, 220 (Bankr.N.D.Ill.1991) (Squires, J.), have ruled that "individual" does not include a corporate debtor. More persuasive authorities hold that a corporate debtor is within the definition of an "individual" under 11 U.S.C. § 362(h) and can seek to recover its damages from the Trustees for a willful violation of the automatic stay. *Tel–A–Communications Consultants, Inc. v. Auto–Use (In re Tel–A–Communications)*, 50 B.R. 250, 253 (Bankr. D.Conn.1985); *U.S. v. INSLAW, Inc.*, 113 B.R. 802, 820 (D.D.C.1989). Subsection (h) must be read with the rest of § 362. There is no reason for the narrow construction proposed by the Trustees since § 362(a) was intended to give all debtors broad protections. *See* House Report No. 95–595, 95th Cong., 1st Sess. 340–2 (1977); Senate Report No. 95–989, 95th Cong.2d Sess. 54, 55 (1978), U.S.C.C.A.N.1978, pp. 5787, 5840, 6296–6298. Moreover, the dictionary definition of "individual" includes an artificial as well as human individual:

### Individual

As a noun, this term denotes a single person as distinguished from a group or class, and also, very commonly, a private or natural person as distinguished from a partnership, corporation, or association; but it is said that this restrictive signification is not necessarily inherent in the word, and that it may, in proper cases, include artificial persons....

*Black's Law Dictionary* (6th ed. 1990). Since Congress did not define "individual" in the Bankruptcy Code, its use of that word can be read according to its common dictionary meaning, particularly when that reading supports the purpose of the provision in which the word is found.

■ 3. Apart from seeking sanctions under § 362(h), a debtor can also seek an order of civil contempt under Fed.R.Bankr.P. 9020.

*Barnett Bank of Southeast Georgia v. Trust Company Bank of Southeast Georgia (In re Ring)*, 178 B.R. 570, 577 (Bankr.S.D.Ga. 1995). The Trustees' argument that a corporate debtor has no redress under § 362(h) and none under Rule 9020 would make a mockery of the broad protections given every debtor under § 362.

■ 4. The Trustees argue correctly that their actions complained of in this case were not violations of 11 U.S.C. § 362(a)(3) for the reasons set forth in Judge Leinenweber's opinion in *In re Midwest Systems, Inc.* (oral ruling, Oct. 20, 1984, 94 C 4712). However, Debtor has proceeded under 11 U.S.C. § 362(a)(6), and *In re Midwest Systems, Inc.* is inapplicable. The oral opinion of Judge Leinenweber did not give helpful analysis of the possible application of § 362(a)(6), and the bankruptcy judge in that case did not specifically make detailed findings demonstrating a specific effort to collect pre-petition debt from the debtor in violation of § 362(a)(6).

■ 5. Pursuant to 11 U.S.C. § 362(a)(1) and § 362(a)(6), upon the filing of a petition, creditors are stayed from collecting or attempting to collect debts that arose prior to the bankruptcy. *Price v. United States*, 42 F.3d 1068, 1071 (7th Cir.1994).

■ 6. The scope of the automatic stay is extremely broad. *See* 1A *Collier on Bankruptcy* ¶ 12.06(1) (15th ed. 1993); *In re Zunich*, 88 B.R. 721, 724 (Bankr.W.D.Penn. 1988); *In re Randall Enterprises, Inc.*, 115 B.R. 292 (Bankr.D.Colo.1990).

■ 7. Thus, even indirect attempts at collection, such as withholding of a student's transcripts until a pre-petition debt is paid, is a violation of the stay. *In re Heath*, 3 B.R. 351 (Bankr.N.D.Ill.1989).

■ 8. Protection of the automatic stay is not limited to actions against property of a debtor. *See* 1 *Ginsburg on Bankruptcy*, § 3.01[c], pp. 3–17.

9. Forcing union members to choose between the loss of their benefits and their

continued desire to work for the Debtor had the direct and predictable effect of pressuring the Debtor for collection of the Trustees' pre-petition claim against the Debtor under threat that the Debtor's failure to comply will likely result in sharp reduction of its work force, and collapse of its ability to operate.

**10.** The evidence has demonstrated that the October 26, 1995, letter was an indirect attempt to collect the pre-petition EIT payments, forcing the Debtor, and the Debtor alone, to pay the pre-petition amounts due to the Trustees in excess of collection on the bond posted by Debtor, or risk losing its employees. Since the bond company has not yet paid and there is no evidence that it will do so by December 1, the October 26 letter was pressure for Debtor to pay in full by December 1. Thus, that letter was a violation of the automatic stay under § 362(a)(6), and the Trustees' threat to suspend benefits to the Debtor's employees was, and until rescinded is, a violation of the automatic stay under § 362(a)(6).

**11.** The Trustees have implied in argument that this Court does not have jurisdiction to hear this matter since they cite authorities pertinent to a "labor dispute" under the Norris–LaGuardia Act, 29 U.S.C. § 113(c), namely *Petrusch v. Teamsters Local 317, Syracuse, NY (In re Petrusch)*, 667 F.2d 297 (2d Cir.1981) (bankruptcy court has no jurisdiction to restrain union attempt to collect pre-petition fringe benefit debt); and *Crowe & Assocs., Inc. v. Bricklayers and Masons Union Local No. 2 of Detroit Michigan (In re Crowe & Assocs., Inc.)*, 713 F.2d 211 (6th Cir.1983) (threat to strike to collect pre-petition fringe benefit payments was "labor dispute" and therefore bankruptcy court had no authority to enjoin activity). The Trustees' citation of these cases, however, does not square either with the facts of this case or with their general position, obviously correct, that the Trustees and the union are different entities. Here, the acts complained of were performed by the Trustees, not by the union IBEW. Since IBEW has neither filed a grievance nor taken any steps to collect this debt, this is not a "labor dispute" under the Norris–LaGuardia Act.

**12.** *Citizen's Bank of Maryland v. Strumpf*, — U.S. —, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995), also cited by the Trustees, is also inapplicable to this case. In *Strumpf*, the Supreme Court decided that the temporary freezing of debtor's account by a bank while it sought relief from the automatic stay under § 362(d) was not a set-off in violation of § 362(a)(3) and § 362(a)(6). The opinion found that a bank account is only a device to pay back money to the debtor, and therefore freezing the bank account was only a temporary refusal to perform the bank's repayment promise. *Id.* at —, 116 S.Ct. at 289. In this case, the Trustees' letter is an attempt to collect a debt and not a temporary refusal to make good on a promise to pay by a creditor. Moreover, the Trustees, unlike the bank in *Strumpf*, have not requested stay modification.

**13.** Either a finding of civil contempt or violation under § 362(h), or both, may be appropriate should a willful and intentional violation of the automatic stay continue. However, because the effective date of the suspension is not to occur until December 1, 1995, and because the Trustees rationally relied on *In re Midwest Systems, Inc.* (although that reliance was misplaced for reasons stated hereinabove), this Court does not find that the violation of the stay has heretofore been willful and intentional under 11 U.S.C. § 362(h) or at this time constitutes a willful act of civil contempt under Fed. R.Bankr.P. 9020.

14. Notwithstanding the foregoing, the Trustees' violation of § 362(a)(6) will be deemed willful and intentional commencing November 27, 1995, unless either of the following occurs:

(a) That Trustees file a motion to modify the automatic stay under 11 U.S.C. § 362(d) to seek permission to let the October 26 letter stand and remain effective and, if cause be shown after notice and hearing, the Court enters an order modifying the auto-

matic stay so as to permit the Trustees to take such acts that are necessary to pursue suspension of benefits of Debtor's employees; or,

b. That on or before November 27, 1995, the Trustees deliver a letter to all of Debtor's employees to whom the October 26 letter was sent, rescinding the October 26, 1995, letter's threat to suspend all of the Debtor's health and welfare benefits on December 1, 1995.

15. Pursuant to these Findings and Conclusions, the Trustees will therefore be ordered to rescind the October 26 letter by November 27, 1995, including informing the Debtor's workers by that date that such letter is to be considered ineffective and should be disregarded, unless by that date the Trustees obtain an order lifting or modifying the automatic stay as set forth above. Any motion to modify stay filed by the Trustees shall not be viewed by this Court as waiver of their legal position that no such motion is required of them.