William T. DIVANE, Jr., et al. as the
Electrical Insurance Trustees,
Appellants,

v.

A AND C ELECTRIC CO.,
INC., Appellee.

No. 96 C 183.
Bankr. No. 95 B 16749.

United States District Court,
N.D. Illinois,
Eastern Division.

March 26, 1996.

Edwin H. Conger, David S. Shannon, Chicago, IL, for Appellants.

Richard Fimoff, Donald N. Wilson, Robbins, Salomon & Patt, Ltd., Chicago, IL, for Appellee.

## MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

Electrical Insurance Trustees ("Trustees") are the trustees of a employee benefit plan covering electricians who are members of Local 134 of the International Brotherhood of Electrical Workers ("IBEW"). Trustees have appealed Bankruptcy Judge Jack Schmetterer's determination (*In re A and C Electric Co., Inc.*, 188 B.R. 975 (Bankr. N.D.Ill.1995)) that a letter sent by Trustees to employees of debtor A and C Electric Co., Inc. ("A & C") employees violated the automatic stay triggered by A & C's Chapter 11 bankruptcy proceedings. For the reasons stated in this memorandum opinion and order, Judge Schmetterer's decision is affirmed.

### Facts [1]

A & C is engaged in the electrical contracting business and employs IBEW members (¶ 2). During the relevant time frame A & C had agreed to be bound to a collective bargaining agreement ("CBA") between IBEW and the Electrical Contractors Association of the City of Chicago, Inc. ("Association") (¶ 3).

CBA Art. XVIII § 13 requires employers such as A & C to make fringe benefit contributions to Trustees on behalf of their employees (¶ 4). As administrators of the Electrical Insurance Trustees Insurance Fund for Electrical Contractors, Trustees have established and maintain an "employee benefit plan," as defined in ERISA § 3(3) (29 U.S.C. § 1002(3)), that provides health and welfare benefits to eligible participants (¶ 7).

Under CBA Art. XVIII § 15 IBEW does not violate the CBA if it removes an employer's electricians from plan coverage because the employer is delinquent in making contributions (¶ 5). Relatedly, CBA Art. XII § 1(f) provides for the suspension of health and welfare coverage if an employer is delinquent in making contributions (¶ 6).

Trustees' powers and duties are of course defined by the trust agreement that creates their trust—in this instance an agreement between Association and IBEW ("Agreement"). Agreement Art. First ¶ (g)(1) provides:

The Trustees shall have the plenary power to make, from time to time, and to enforce such rules and regulations for the determination of eligibility for benefits, for the proper collection and handling of said Fund, for the allocation of benefits to those eligible for it, for the determination of who may be beneficiaries and the terms and conditions under which benefits shall be given to the beneficiaries and forfeited by them, and for the determination of methods of procedure and of every other question (irrespective of its nature) arising in the collection and administration of said Fund, and generally in the carrying out of this Agreement, and in fully and completely accomplishing its purpose.

Agreement First ¶ (o)(2) provides in relevant part (¶ 10):

To the fullest extent permitted by federal law, the Trustees shall have discretionary authority to determine all questions arising

---

1. This section is derived from the Bankruptcy Court's Findings of Fact (cited simply "¶ —") as set out in 188 B.R. at 977–79.

in connection with the Trust Fund ... and the decision of a majority of the Board of Trustees, if made in good faith, shall be binding upon all persons dealing with the Trust Fund or claiming any benefit thereunder.

On August 16, 1995 A & C filed for Chapter 11 bankruptcy (¶ 1). At that time A & C was delinquent in making contributions to Trustees for June, July and August 1995, so that as of the time that Trustees filed their proof of claim in bankruptcy (in October 1995) A & C owed over $50,000 in contributions and liquidated damages (¶¶ 12, 15–16). Before filing under Chapter 11, A & C had obtained a $25,000 bond from a bonding company for the purpose of securing contributions due to Trustees—an amount obviously not sufficient to pay the 1995 delinquent contributions in full, even if the bonding company were to pay the full amount of the bond (¶¶ 14, 23).

Trustees sought payment of the delinquent pre-petition contributions from A & C's bonding company, and to the extent that the delinquency had not been fully covered by the bonding company before December 1, 1995, Trustees sought unsuccessfully to obtain the balance from A & C (¶ 23). On October 26, 1995 Trustees mailed A & C's employees a notice stating in relevant part (¶¶ 18–19 and A & C Ex. 1):

> This is to inform you that your Health and Welfare benefits will be suspended effective December 1, 1995 because this employer is delinquent in paying amounts due to the Trust under the terms of its collective bargaining agreement. In accordance with the Trustees' rules, benefits under the trust will be suspended for employees of the above employer after the date shown above if the delinquent contributions are not paid by November 15, 1995.

> This suspension only applies while you are working for this employer. If you should leave work with this employer then the Plan's regular eligibility provisions based on contributions received will be used to determine if your coverage will continue.

Trustees made no effort to ask the Bankruptcy Court to lift or modify the automatic stay (¶ 17).

### Bankruptcy Court Decision

Judge Schmetterer found that the October 26 letter violated the automatic stay triggered by A & C's bankruptcy petition because it amounted to an impermissible "act to collect, assess or recover" a prepetition claim within the meaning of 11 U.S.C. § 362(a)(6)[2] (¶ 24):

> The purpose of the October 26 letter was to collect, directly or indirectly, the Trustees' claim against [A & C] by forcing [A & C] to pay the delinquent pre-petition contributions, because union employees normally have and require health and welfare benefits. Suspension of those benefits would serve to discourage those workers from working for [A & C]. Thus, the letter threatened [A & C] with loss of its employees and was thereby a powerful pressure on [A & C] to pay the pre-bankruptcy debt or lose its workers. Loss of workers would collapse [A & C's] business. The transmittal of that letter therefore had the effect of posing an imminent threat to the business operation and existence of [A & C]. Unless that letter is rescinded or the arrearage is paid by December 1, [A & C's] Chapter 11 reorganization effort will likely fail after December 1.

Hence Judge Schmetterer ordered Trustees to rescind the letter and to inform A & C's employees that "such letter is to be considered ineffective and should be disregarded" (188 B.R. at 982).

### Standard of Review and Issues Presented

 Dual standards of review govern bankruptcy appeals in a core proceeding.[3] Bankruptcy Rule 8013 dictates that a Bankruptcy Court's findings of fact cannot be set aside unless clearly erroneous. But that deferential standard does not apply to the Bankruptcy Court's conclusions of law, which are reviewed by this Court de novo (*In re Ebbler Furniture & Appliances, Inc.*, 804 F.2d 87,

---

**2.** Further citations to the Bankruptcy Code will simply take the form "Section—," omitting repeated reference to Title 11.

**3.** More on the "core proceeding" subject later.

89 (7th Cir.1986)), or to mixed questions of fact and law—that is, to the manner in which factual conclusions implicate legal questions (*id.*).

Trustees contend that the Bankruptcy Court erred in concluding that they violated the automatic stay triggered by A & C's Chapter 11 bankruptcy proceedings because:

 1. Trustees' mailing of letters to A & C employees was not an "act to collect, assess, or recover a claim against the debtor" within the meaning of Section 362(a)(6).

 2. A & C does not "have standing to seek relief on behalf of its employees against a suspension of their health plan benefits" (Trustees Br. 3).

 3. A & C's petition was not a "core proceeding" within the meaning of 28 U.S.C. § 157(b).

Those contentions will be dealt with in turn.

### Automatic Stay and Section 362(a)(6)

■■■ One of the bankruptcy laws' primary goals is to protect the debtor from the collection efforts of creditors until discharge (*Bronson v. United States*, 46 F.3d 1573, 1578 (Fed.Cir.1995)). To serve that end Congress enacted Section 362(a), the "automatic stay" provision, that "bars assessment against the bankrupt of any claim that arose before the commencement of the bankruptcy proceeding" (*id.* at 1577). As the legislative history of Section 362(a) put it (*id.* at 1578–79, quoting H.R.Rep. No. 595, 95th Cong., 1st Sess. 340 (1978), *reprinted in* 1978 U.S.C.C.A.N. 6296–97):

> The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

Less than two weeks ago our Court of Appeals reconfirmed the pressure-avoidance purpose of Section 362 in a case dealing with the subsection at issue here (*In re Duke*, 79 F.3d 43, 44 (7th Cir.1996)):

> The automatic stay provision of § 362, as noted above, generally prohibits the credi-

tor from taking "any act" to collect prepetition debts. Its purpose, as this Court explained in *Matthews v. Rosene*, 739 F.2d 249, 251 (7th Cir.1984), is "to benefit a debtor by preventing harassment and frustration of rehabilitation efforts through pursuit by creditors in individual actions."

To that end Section 362(a)(6) outlines the scope of the stay in part by forbidding, after the filing of a bankruptcy petition:

> (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title....

Courts regularly emphasize (1) that the quoted language is "very broad" and is therefore to be construed broadly and (2) that it is designed to keep creditors from coercing and harassing the debtor in order to collect prepetition debts (see, e.g., *Morgan Guar. Trust Co. v. American Sav. & Loan Ass'n*, 804 F.2d 1487, 1491 (9th Cir.1986); *In re Sechuan City, Inc.*, 96 B.R. 37, 41 (Bankr.E.D.Pa. 1989)). By its own terms Section 362(a)(6) applies to "any act" and "prevents creditors from attempting in any way to collect a prepetition debt" (*In re Hellums*, 772 F.2d 379, 381 (7th Cir.1985), quoting the legislative history of Section 362(a)(6), H.R.Rep. No. 595, 95th Cong. 1st Sess. 342 (1977)).

■■■ Thus any act taken by a creditor for the purpose of collecting a prepetition debt violates the stay if it amounts to pressure on the debtor to pay (see *Sechuan City*, 96 B.R. at 41 (citing cases); *In re Briggs*, 143 B.R. 438, 452–54 (Bankr.E.D.Mich.1992); 2 William L. Norton, Jr., *Bankruptcy Law and Practice 2d* § 36:10, at 36–32 to 36–33 (1994) ("In short, an unsecured creditor may not affirmatively press the debtor to pay a prepetition debt")). *Duke* has just reconfirmed that principle, although it did not find the principle violated by a polite letter from the creditor to the debtor's lawyer suggesting that the debtor consider entering into a reaffirmation agreement *if* he so wished. And communications from the creditor to third parties can fall within the scope of Section 362(a)(6) so long as the communications are factually deemed to be an "act to collect"— that is, if they are done with the intent to collect the debt and if they have the effect of

coercing or harassing the debtor (see *In re Smith*, 185 B.R. 871 (Bankr.M.D.Fla.1994), holding that a letter sent from a creditor to debtor's employer informing the employer of debtor's bankruptcy and suggesting that the employer reconsider debtor's employment amounted to harassment in violation of Section 362(a)(6)).

■ As already stated, here Judge Schmetterer made a factual finding (¶ 24) that the purpose of the October 26 letter was to collect Trustees' prepetition claim against A & C. That same finding went on to say that the letter had the effect of pressuring A & C for collection, because A & C's failure to comply would likely make it difficult if not impossible for A & C to continue to operate. Those factual findings are invulnerable to attack,[4] but Trustees contend that because A & C has no property interest in its employees' benefits under the Trustees-administered plan, the automatic stay does not extend to Trustees' actions with respect to A & C's employees' plan benefits.

To that end Trustees rely principally on an October 20, 1994 oral ruling by this Court's colleague Honorable Harry Leinenweber in *Divane v. Midwest Sys., Inc.*, No. 94 C 4712. That ruling dealt with a very similar factual situation and reversed the Bankruptcy Court's determination that Trustees' letters to the debtor's employees violated the automatic stay. But there Judge Leinenweber was confronted not with the question that is posed here, but rather with the quite different question whether such letters violated Section 362(a)(3)—and the answer to that question depends on whether an employer has a property interest in its employees' ERISA benefits plan so that the plan can be deemed property of the bankruptcy estate.[5]

This Court has no quarrel with Judge Leinenweber's conclusion that an employer has no property interest in its employee ben-efit plans. But this Court also agrees with Judge Schmetterer in saying (188 B.R. at 980):

> The Trustees argue correctly that their actions complained of in this case were not violations of 11 U.S.C. § 362(a)(3) for the reasons set forth in Judge Leinenweber's opinion.... However, [A & C] has proceeded under 11 U.S.C. § 362(a)(6), and *In re Midwest Systems, Inc.* is inapplicable. The oral opinion of Judge Leinenweber did not give helpful analysis of the possible application of § 362(a)(6), and the bankruptcy judge in that case did not specifically make detailed findings demonstrating a specific effort to collect pre-petition debt from the debtor in violation of § 362(a)(6).

■ Section 362(a)(6)'s purpose of keeping creditors from employing pressure tactics or coercion in attempting to collect prepetition debts does not require that the creditor take some action to obtain possession of or to exercise control over the debtor's property (which is the thrust of Section 362(a)(3)). That is because the aim of Section 362(a)(6) is *not* the protection of the debtor's property as such, but rather the protection of the debtor itself. 1 *Chapter 11 Theory and Practice: A Guide to Reorganization* § 8.03 (James F. Queenan, Jr. et al. eds., 1994) explains that the automatic stay is designed to protect "three targets of creditor actions": the debtor, property of the debtor and property of the estate. Each of the eight subsections of Section 362(a) is geared to protect one or two of those targets—for example, Section 362(a)(3) protects property of or from the estate. But as just stated, the "protected target" of Section 362(a)(6) is not property of the debtor or property of the estate but the debtor itself—the goal being to free the debtor from being subjected to coercive tactics intended to induce repayment of prepetition debt.

4. Trustees' opening Brief did not challenge any of the Bankruptcy Court's factual findings, but their R.Br. 1–2 seeks to take issue with those factual findings as to the effect that would flow from a suspension of A & C's employees' benefits. A & C objected to that as the infusion of a new issue not included in the scope of Trustees' appeal as originally filed. As this Court explained orally on March 14, 1996, the date on which A & C tendered its objection, this opinion will perforce consider only properly presented issues. Because Trustees never identified any of the Bankruptcy Court's factual findings as a ground for appeal, they will not be allowed to contest those factual findings now.

5. Section 362(a)(3) stays "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."

As a result, the cases construing Section 362(a)(6) understandably focus on the creditor's actions, to determine both whether those actions are aimed at collecting prepetition debt *and* whether they also amount to harassment or coercion.[6] Although neither party offered, and this Court could not find, any cases directly on point,[7] this case is closely analogous to cases in which a creditor refuses to provide services to a debtor for the purpose of collecting a prepetition debt (see, e.g., *In re Olson,* 38 B.R. 515, 516–18 (Bankr.N.D.Iowa 1984); *In re Sportfame of Ohio, Inc.,* 40 B.R. 47, 48–51 (Bankr. N.D.Ohio 1984); *In re Karsh Travel, Inc.,* 87 B.R. 110, 111–12 (Bankr.N.D.Cal.1988), *aff'd,* 102 B.R. 778, 780 (N.D.Cal.1989)).

There are of course three distinct sets of interests involved in this case: those of Trustees, those of A & C and those of A & C's employees. And the flaw that runs throughout Trustees' various contentions on appeal is that they focus solely on the interests of A & C's employees and on the fact that A & C does not have a property interest in its employee benefit plan. They ignore the fact that the Bankruptcy Code expressly provides A & C with a different type of protectible interest: It was to be free from "any act to collect" no matter what form that act took (see *Olson,* 38 B.R. at 517–18, emphasizing that "Section 362(a)(6) prohibits collection attempts 'in any way' ").

Under ordinary circumstances, if A & C were delinquent in making contributions Trustees would be able to sue A & C for the delinquency. Trustees could also suspend A & C's employees' benefits until payment was made.[8] But A & C's bankruptcy changed the game in an important respect—because the Bankruptcy Code says (1) that once A & C filed for bankruptcy, Trustees could no longer sue to collect the prepetition debt,[9] and (2) more importantly for present purposes, that they were also no longer free to engage in any "act to collect" that debt. By engaging in an act that the Bankruptcy Court specifically found to be coercive and to be done with the intent to collect on the debt, Trustees violated the automatic stay, even though their act also impacted significantly on the interests of a third party—A & C's employees. As *In re Sportfame,* 40 B.R. at 50 put it, in a quotation that could readily be adapted to this case:

> While perhaps unremarkable otherwise, Wilson's actions take on an added significance upon the filing of a petition in bankruptcy. Wilson could have simply refused, for any reason, to sell goods to debtor or offered no explanation for its refusal to do business. Instead, its sole reason for refusing to sell goods to debtor was its desire to collect its prepetition debt. The act in this context had the effect of interfering with the reorganization effort, a result at odds with the purpose of the bankruptcy laws.

■ In sum, the Bankruptcy Court has found that (1) the mailing of letters to A &

---

**6.** *Briggs,* 143 B.R. at 453, in the course of an excellent discussion of the type of "coercion" that Section 362(a)(6) is designed to prohibit, discusses a hypothetical situation that demonstrates "behavior of the type" that "Section 362(a)(6) is designed to prevent":

> [C]reditor B holds an unsecured claim against debtor B and a security interest in one of several televisions owned by debtor B's sister for her separate debt. The sister's obligation is in technical default. Creditor B tells the debtor that it will repossess his sister's TV if he refuses to reaffirm.

Clearly the TV owned by the debtor's sister is neither the debtor's property nor property of the debtor's bankruptcy estate. But Section 362(a)(6) does not concern itself with that. Instead its proper focus is on the creditor's behavior and the effect of that behavior on the debtor.

**7.** But *In re Columbia Packing Co.,* 35 B.R. 447, 450 n. 4 (Bankr.D.Mass.1983) certainly suggests that the cancellation of an employee benefit plan

because of the debtor-employer's failure to pay delinquent prepetition contributions would implicate the automatic stay.

**8.** Of course this opinion is solely directed at Trustees' actions as to prepetition delinquencies. It does not at all address the rights of the parties if A & C were to fall delinquent in making postpetition contributions to the plan.

**9.** If Trustees had actually sued A & C for payment of the delinquent contributions, they unquestionably would have violated the automatic stay under Section 362(a)(1) (*Cornick v. Hi Grade Cleaners, Inc.,* 595 F.Supp. 718, 720–21 (N.D.Ill. 1984), holding that under Section 362(a)(1) a bankruptcy petition operates as a stay of a lawsuit by welfare and pension fund trustees to collect delinquent prepetition contributions).

C's employees was done for the purpose of collecting A & C's delinquent contributions and (2) that act amounted to undue coercion. Such conduct violates Section 362(a)(6) without regard to whether A & C has an interest in its employees' plan benefits, because that provision by its terms bars "any act to collect" and is not limited to actions against property of the debtor.[10]

### Standing Under ERISA

 Trustees R.Br. 6 next contends that "A & C has no standing to challenge, on behalf of plan participants, a suspension of ERISA benefits." It is true that only participants, beneficiaries, fiduciaries or the Secretary of Labor may bring actions to obtain relief under ERISA (*Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 25, 27, 103 S.Ct. 2841, 2854, 2855, 77 L.Ed.2d 420 (1983)). But in this case A & C did not seek to avail itself of any ERISA remedies. It rather sought relief from an action taken to collect a prepetition debt in violation of the Bankruptcy Code's automatic stay provision—and there is nothing in either ERISA or the Bankruptcy Code that suggests that ERISA somehow limits the reach of the automatic stay in this case (see 29 U.S.C. 1144(d); cf. *In re Kincaid,* 917 F.2d 1162, 1164 (9th Cir.1990)).

### Core Proceeding

 Finally, Trustees R.Br. 7 asserts that the Bankruptcy Court lacked jurisdiction over this dispute on the ground that it was not a "core" proceeding within the meaning of Section 157(b) because "it does not involve the debtor,[11] the debtor's property, or property of the estate." But because the automatic stay is so integral to the very operation of the bankruptcy laws (see the earlier quotation from the legislative history of Section 362(a)), without question "a proceeding to prosecute a violation of the automatic stay is a core proceeding ..." (*Budget Serv. Co. v. Better Homes of Va., Inc.,* 804 F.2d 289, 292 (4th Cir.1986); accord, *In re McGee,* 181 B.R. 307, 310 (Bankr.N.D.Ohio 1995)).[12]

### Conclusion

Judge Schmetterer's analysis was entirely correct. Accordingly the decision of the Bankruptcy Court is affirmed.

---

**10.** Trustees also seek to rely on *Citizens Bank of Maryland v. Strumpf,* —— U.S. ——, ——, 116 S.Ct. 286, 290, 133 L.Ed.2d 258 (1995), which held that a bank's temporary freezing of a debtor's checking account while it sought relief from the automatic stay was not a "setoff" in violation of Section 362(a)(7). *Strumpf* went on to hold that the same action did not violate Section 362(a)(3) or Section 362(a)(6) because the bank's temporary freeze of the debtor's account neither "took something from" the debtor nor "exercised dominion over property that. belonged to" the debtor. But the very brief discussion in *Strumpf* certainly did not state that the *only way* to bring Section 362(a)(6) into play is by taking an action against the property of the debtor's estate.

**11.** Trustees' contention that this action "does not involve the debtor" really underscores the earlier-described basic flaw in all of Trustees' contentions on appeal. Although this action certainly involves the interests of A & C's employees, it *also* involves an important interest of debtor A & C: its right to be free from actions taken to pressure its repayment of a prepetition debt.

**12.** *United States v. Inslaw, Inc.,* 932 F.2d 1467, 1472–73 (D.C.Cir.1991), a case cited by Trustees, is inapposite. *Inslaw* simply determined that the bankruptcy court had erred by interpreting the scope of the automatic stay provision too broadly. Here of course no such result is possible, because this Court holds that the Bankruptcy Court was correct in determining that Trustees' actions were within the scope of the automatic stay as an "act to collect" in violation of Section 362(a)(6). Indeed, *Inslaw, id.* expressed no disagreement with the core principle (bad pun intended) as stated in *Budget Serv.,* which *Inslaw* actually cited for that proposition. Similarly, the Trustees R.Br. 4–6 contention that A & C should have requested an injunction under Section 105(a) rather than claiming a violation of the automatic stay is just wrong, for that contention assumes that Trustees' act was beyond the reach of the automatic stay—an assumption at odds with this opinion's holding.